**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**Allen L. STREIT, Defendant–Appellant.**

**No. 90–10509.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 7, 1991.

Decided April 23, 1992.

As Amended May 19, 1992.

Stanley M. Slonaker, Phoenix, Ariz., for defendant-appellant.

Linda C. Boone, Asst. U.S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Before: GOODWIN, NORRIS, and THOMPSON, Circuit Judges.

GOODWIN, Circuit Judge:

Allen L. Streit appeals his sentence under the Sentencing Guidelines and his conviction, following a jury trial, for assault on a federal officer and for using or carrying a firearm during a crime of violence, in violation of 18 U.S.C. § 111, 1114, and 924(c). We affirm Streit's conviction but vacate his sentence and remand to the district court for resentencing.

## I. BACKGROUND

### A. *Facts*

On January 24, 1989, FBI Agents J. David English and Anthony E. Oldham, working for the FBI's fugitive detail, attempted to arrest Streit in Peoria, Arizona. The agents observed Streit leave his father's house with a female companion, Dana Jensen, and head toward a Subaru parked in front of the house. English and Oldham drove to a spot approximately 15–20 feet behind the Subaru. The agents got out and approached Streit and Jensen, who were standing at the rear of the Subaru.

English identified himself and ordered Streit to freeze. Oldham testified that when he got out of the car he also yelled "FBI."

Streit then got into the Subaru. Oldham followed with his gun drawn and entered the car on the passenger side. English opened the driver's side door and tried to restrain Streit. Streit started the car and began driving away. A violent struggle ensued, during which Streit obtained Oldham's revolver. Both Oldham and English fought with Streit to gain control of the gun. Streit bit English's thumb so hard that he crushed the bone. Both agents then lost their grip on the gun. English drew his own revolver and retreated behind the corner of a house across the street. Oldham and Streit continued to struggle. At one point, Streit bit Oldham's thumb severely. Streit regained control of the gun and pointed it at Oldham a short distance away. Streit then noticed English across the street and pointed the gun at him as well. English heard gunshots and fired five times at Streit, who fell to the ground with a self-inflicted gunshot wound. Uniformed officers from the Peoria police department soon arrived and ordered Streit to put down his weapon. Streit alternated between pointing the gun at the officers and at himself. Detective Mike Tellef, a hostage negotiator from the Peoria police department, spent over three hours talking Streit into unloading the gun and surrendering.

### B. *Proceedings Below*

Counts I and II of the indictment charged Streit with violations of 18 U.S.C. §§ 111 and 1114, assault on a federal officer with a dangerous weapon, for his actions against agents English and Oldham, respectively. Counts III and IV charged Streit with violations of 18 U.S.C. § 924(c), using or carrying a firearm during a crime of violence, in relation to his commission of the offenses alleged in Counts I and II.

Streit was tried before a jury in June 1990. At the conclusion of the evidence, Streit requested and received a jury instruction on the lesser included offense of

assault on a federal officer without a dangerous weapon. The jury convicted Streit on Count IV and on the lesser included assault offenses with respect to Counts I and II.

The district court sentenced Streit to consecutive three-year prison terms on Counts I and II, a statutory minimum five-year prison term on Count IV to be served consecutive to the assault sentences, three years of supervised release, and a $150 special assessment. Streit timely appealed. Subsequently, Streit filed a motion requesting the unsealing of FBI reports that had been submitted to the court *in camera* by the government. The motion was denied and Streit appealed.

## II.  ISSUES ON APPEAL

Streit argues (1) that the trial court erred by refusing to give a requested self-defense instruction and by failing to instruct the jury that Streit's use or carrying of a revolver must have occurred during or in relation to the assault; (2) that the indictment was constructively amended; (3) that the trial court improperly sealed certain FBI reports and denied discovery to the defense; and (4) that the district court erred in departing upward from the Sentencing Guidelines' presumptive range based on the aggravating circumstance of physical injury and on the inadequacy of Streit's criminal history category.

## III.  JURY INSTRUCTIONS

■ This circuit has not resolved the question whether a district court's denial of a proposed jury instruction is reviewed for errors of law, sometimes characterized as "de novo," or for an abuse of discretion. *See United States v. Sotelo–Murillo*, 887 F.2d 176, 179 (9th Cir.1989) (collecting cases); *United States v. Davis*, 876 F.2d 71, 72 (9th Cir.) (per curiam) (same), *cert. denied*, 493 U.S. 866, 110 S.Ct. 188, 107 L.Ed.2d 143 (1989). It is not necessary to resolve this issue on the present appeal, however, because the result would be the same under either standard.

■ An assertion that the trial court's instructions to the jury misstated the elements of the crime does present a question of law subject to de novo review. *See United States v. Terry*, 911 F.2d 272, 279 (9th Cir.1990). The trial court's formulation of the instructions and choice of language, however, is reviewed for an abuse of discretion. *See United States v. Echeverry*, 759 F.2d 1451, 1455 (9th Cir.1985); *see also United States v. Belgard*, 894 F.2d 1092, 1095 (9th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 164, 112 L.Ed.2d 129 (1990).

### A. The Requested Self–Defense Instruction

Streit argues that the trial court erred in failing to instruct the jury on self-defense. A criminal defendant is entitled to a jury instruction on any theory "which provides a legal defense to the charge against him and which has some foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility." *United States v. Yarbrough*, 852 F.2d 1522, 1541 (9th Cir.), *cert. denied*, 488 U.S. 866, 109 S.Ct. 171, 102 L.Ed.2d 140 (1988). A trial judge must instruct the jury on self-defense "if there is evidence upon which the jury could rationally sustain the defense." *United States v. Jackson*, 726 F.2d 1466, 1468 (9th Cir.1984). The "merest scintilla of evidence," however, will not suffice. *Id.*

■ The district court concluded that Streit was not entitled to an instruction on self-defense because there was not sufficient evidence in the record to support Streit's theory that he did not hear the FBI agents identify themselves and did not realize that the men he was struggling with were law enforcement officers. We agree.

Streit first suggests that there is no evidence to indicate that he was aware of the official status of Agents Oldham and English. The record contains ample evidence indicating that the men clearly identified themselves as FBI agents and that Streit was aware of their official status. Streit concedes that Dana Jensen, who was standing near Streit when the agents arrived, heard English and Oldham yell "FBI, freeze" as they approached Streit's car. During the standoff with Peoria police officers, Streit indicated that he was aware of the agents' official status when he referred to the gun he was wielding as a "police gun."

The only evidence in the record that might tend to support Streit's self-defense theory is Dana Jensen's testimony that Streit was getting into his car when she heard the initial FBI identification, and the statement, contained in Detective Tellef's police report, that Streit asked, "That is what they yelled at me?" after he heard one of the Peoria police officers mention the FBI. This evidence is simply not enough to justify a self-defense instruction. The fact that Streit was getting into his car when the agents yelled "FBI, freeze" from a distance of approximately 20 feet does not tend to prove that Streit was unable to hear the identification which Jensen heard clearly. Likewise, Streit's statement to Detective Tellef does not indicate that Streit was unaware that Agents Oldham and English were law enforcement officers. The statement suggests only that Streit was uncertain about which law enforcement agency the men worked for, and at best constitutes only a "scintilla" of evidence in support of Streit's self-defense theory. *See Jackson*, 726 F.2d at 1468.[1]

■ Relying on *United States v. Gometz*, 879 F.2d 256 (7th Cir.1989), *cert. denied*, 493 U.S. 1033, 110 S.Ct. 752, 107 L.Ed.2d 768 (1990), Streit next argues that he was entitled to a self-defense instruction even if he knew Oldham and English were FBI agents because he was resisting an unreasonable use of force by the agents. Streit's reliance on *Gometz* is misplaced.

1. Streit argues that the fact that the jury sent a question to the trial judge regarding self-defense indicates that a rational jury could have found sufficient evidence upon which to sustain the defense. Streit's argument is beside the point. The jury's question in all likelihood stemmed from defense counsel's improper allusions to self-defense in his closing argument. In any event, the jury's confusion does not alter the fact that no evidence was presented at trial to justify a self-defense instruction.

Gometz was charged with assaulting a federal officer while he was an inmate in prison. In contrast to the present case, the defendant in *Gometz* presented testimony from other inmates as to the abuse he suffered at the hands of prison officials. *See* 879 F.2d at 258. In the present case, Streit has presented no evidence to support his argument that the FBI agents employed unjustifiable force in their attempt to arrest Streit. Once the agents had identified themselves and Streit had attempted to flee, the agents were justified in using force in an attempt to restrain Streit.

### B. The "Use or Carry" Instruction

Streit also argues that the trial court erred in failing to instruct the jury that to convict on Count IV it must find that Streit carried a firearm "in relation to" his commission of the lesser included offense in Count II. Because Streit contends that the district court failed to explain adequately an essential element of the offense, we review the challenged instructions de novo.

■ To convict under 18 U.S.C. § 924(c), the government must establish that the defendant committed a crime of violence and that he knowingly used or carried a firearm while committing the crime. The government also must prove that the defendant's possession of the firearm played at least an indirect role in the underlying offense. In *United States v. Stewart*, 779 F.2d 538 (9th Cir.1985), we held that the "relation to" requirement of section 924(c) is satisfied

> [i]f the firearm is within the possession or control of a person who commits an underlying crime as defined by the statute, and the circumstances of the case show that the firearm facilitated or had a role in the crime, such as emboldening an actor who had the opportunity or ability to display or discharge the weapon to protect himself or intimidate others, whether or not such display or discharge in fact occurred.

*Id.* at 540. With respect to Count IV, the trial court instructed the jury that if it

found Streit guilty of the lesser included offense of assaulting a federal officer under Counts I and II, it could also find him guilty of Count IV if it found "beyond a reasonable doubt that the defendant carried a revolver" during the commission of the assault.

■ During deliberations, the jury sent the following question to the court:

> Instruction 21 says 'the defendant carried a revolver.' Would holding a gun in one's hand be considered carrying?

The court responded by sending a supplemental instruction to the jury:

> Members of the jury, you are advised that 'carrying' a firearm includes possession of the firearm for purposes related to the commission of a crime of violence. Carry can include transport or possess. "Carrying" should not be construed in a hypertechnical or narrow way.

The trial court's instructions, viewed as a whole, accurately stated the law.[2] The court's instruction that the defendant's possession must be for purposes related to the commission of a crime of violence adequately conveyed the "relation to" requirement of section 924(c).

### IV. CONSTRUCTIVE AMENDMENT

Streit maintains that he was convicted under Count IV of a crime for which he was not indicted because the grand jury only considered evidence that Streit *used* a revolver during and in relation to his assault on Agent Oldham and did not consider evidence that Streit merely *carried* a revolver while committing the assault. We find Streit's claim to be without merit.

■ The Fifth Amendment provides that a defendant may be tried only on charges for which a grand jury has returned an indictment. Accordingly, the charges may not be broadened by the court during the course of trial. *See United States v. Pazsint*, 703 F.2d 420, 423 (9th Cir.1983). An indictment is deemed constructively amended "if the evidence presented at trial, together with the jury

**2.** The wording of the district court's instruction tracks the language of *United States v. Barber*, 594 F.2d 1242, 1244 (9th Cir.), *cert. denied*, 444 U.S. 835, 100 S.Ct. 69, 62 L.Ed.2d 46 (1979).

instructions, raises the possibility that the defendant was convicted of an offense other than that charged in the indictment." *United States v. Apodaca,* 843 F.2d 421, 428 (10th Cir.), *cert. denied,* 488 U.S. 932, 109 S.Ct. 325, 102 L.Ed.2d 342 (1988).

When the grand jury returned its indictment on Count II, it necessarily determined that probable cause existed to support the lesser included offense of assault. When the grand jury indicted Streit on Count IV, it determined that probable cause existed that Streit used or carried a firearm during or in relation to committing the Count II offense. Because Streit could not have used the revolver without carrying it, the grand jury's indictment on Count IV necessarily included the charge of carrying a firearm while committing an assault on a federal officer.

## V. DISCOVERY MATERIAL

Upon the government's request, the trial court conducted an *in camera* review of certain FBI reports and, after determining that the reports contained no exculpatory or impeachment information subject to disclosure under the rule of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), ordered the documents sealed. Streit appeals the denial of his motion to unseal the reports.

Prosecutors have a duty under due process to disclose evidence that is both favorable to the accused and material to either guilt or punishment. *See United States v. Bagley,* 473 U.S. 667, 674, 105 S.Ct. 3375, 3379, 87 L.Ed.2d 481 (1985); *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196. Evidence impeaching the credibility of key government witnesses also falls under the *Brady* doctrine. *See Bagley,* 473 U.S. at 676, 105 S.Ct. at 3380; *Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). Failure to disclose such exculpatory or impeachment evidence requires reversal if the evidence "is material in the sense that its suppression undermines confidence in the outcome of the trial." *Bagley,* 473 U.S. at 678, 105 S.Ct. at 3381; *see also United States v. Shaffer,* 789 F.2d 682, 688 (9th Cir.1986).

The government argues that Streit is not entitled to appellate review because he cannot demonstrate that the reports in question contained exculpatory material and because Streit has not alleged any error in the *in camera* procedure. The government's position is untenable because it seeks to use Streit's ignorance of the contents of the sealed reports as leverage against his request for review. Criminal defendants necessarily must rely on the ethical fortitude of prosecutors and the careful judgment of trial courts in their efforts to obtain exculpatory information in the government's possession. If defendants were required to make a positive showing that sealed documents in fact contained exculpatory material, *Brady* violations would come to the attention of appellate courts only by the merest happenstance of confidential information falling into a defendant's hands.

The sealed records have been made available to this court for review, and we find no exculpatory or impeachment evidence requiring disclosure. The first document is an investigative report by Agent English describing his contacts with certain witnesses. The report contains no information that is material to either guilt or punishment, and is thus not discoverable under *Brady.* Disclosure of the witnesses' identities was not required under *Roviaro v. United States,* 353 U.S. 53, 62, 77 S.Ct. 623, 628, 1 L.Ed.2d 639 (1957), because they were not witnesses to the crime and were not involved in the criminal enterprise in any way.

The second document is a report prepared by the FBI in Phoenix summarizing the investigation following the assault on English and Oldham. The report recounts the basic facts of the assault and contains no exculpatory or impeachment evidence subject to disclosure under *Brady.* The report does not contain any statements from English and Oldham, and the agents involved in preparing the report were not called as witnesses. Thus, the Jencks Act, 18 U.S.C. § 3500, has no application.

The final three documents relate to the FBI's internal investigation of the shooting incident. The documents—a report from the Phoenix section chief and letters to Agents English and Oldham from the FBI administrative services division—contain no exculpatory material. The trial court ruled that while the documents might have some limited impeachment value, they would not be disclosed because their probative value was outweighed by the danger of unfair prejudice, confusion of the issues and undue delay. We find no error in the district court's ruling.

## VI. SENTENCING ISSUES

Streit challenges the district court's upward departure from the Sentencing Guidelines' presumptive sentencing range of 30–37 months to a sentence of 72 months for the assault convictions. Though we deal in this opinion with a prison sentence that would have been unremarkable prior to the promulgation of the Sentencing Guidelines, we nevertheless must consider a novel and somewhat esoteric problem in the application of the guidelines: How a sentencing judge may properly depart upward from the guidelines' recommended range on the ground that a defendant's criminal history category significantly underrepresents the defendant's prior criminal conduct and recidivist tendencies when the defendant already is in the highest criminal history category, category VI.

### A.  *Streit's Sentence*

In determining Streit's sentence, the district court applied the offense guideline for Obstructing or Impeding Officers, which specifies a base offense level of six.  *See* United States Sentencing Commission, *Guidelines Manual* § 2A2.4 (1989) [hereinafter "U.S.S.G."].  Pursuant to U.S.S.G. § 2A2.4(b)(1), the district judge adjusted the base level upward by three levels to reflect the physical contact involved in the assault. The judge then increased the base level by two more levels pursuant to U.S.S.G. § 3D1.4 because Streit was convicted on multiple counts. Streit does not object to these adjustments.

The district court determined that Streit had 12 criminal history points, which would place him in criminal history category V. Because Streit met the requirements of U.S.S.G. § 4B1.1, however, the court determined that Streit should be classified as a "career offender." [3]  As a career offender, Streit's criminal history category automatically became category VI and his offense level became 12 pursuant to U.S.S.G. § 4B1.1.

The district court then departed upward from the 30–37 month sentencing range recommended at offense level 12 for a defendant in criminal history category VI. *See* U.S.S.G. Ch. 5, Pt. A, at 5.2 (Sentencing Table). The court based its departure on the need to take account of both the physical injury to agents English and Oldham caused by Streit's assault and the fact that Streit's criminal history category did not adequately reflect his past criminal conduct and potential for recidivism. The court arrived at a sentencing range of 63–78 months and imposed two consecutive 36-month sentences pursuant to U.S.S.G. § 5G1.2(d).

### B.  *Standard of Review*

We review departures from the Sentencing Guidelines under the three-part test of *United States v. Lira–Barraza*, 941 F.2d 745 (9th Cir.1991) (en banc). First, we determine whether the trial court had the legal authority to depart. A district court may depart upward from the applicable guideline range only if it identifies an aggravating circumstance "that was not adequately taken into consideration by the

---

3. A defendant is classified as a career offender if three conditions are satisfied:
   1) the defendant was at least 18 years old at the time of the instant offense;
   2) the instant offense is a felony conviction for either a crime of violence or a controlled substance offense;  and

3) the defendant has at least two prior felony convictions for either crimes of violence or controlled substance offenses.
   *See* 28 U.S.C. § 994(h);  U.S.S.G. § 4B1.1.

Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b); *Lira–Barraza*, 941 F.2d at 746. Second, we review for clear error the factual findings in support of the aggravating circumstance identified by the district court as a basis for departure. Finally, we review the reasonableness of the extent of the district court's departure "in light of the structure, standards and policies of the Act and Guidelines." *Lira–Barraza*, 941 F.2d at 746–47, 751. The district court must explain the reasoning for both the direction and degree of its departure in sufficiently specific language to allow us to conduct a meaningful review. 18 U.S.C. § 3553(c)(2); *Lira–Barraza*, 941 F.2d at 751.

## C. *The Physical Injury Departure*

The district court indicated that it was departing upward by the equivalent of four offense levels—from level 12 to level 16—to take account of the bite wounds and crushed thumbs suffered by Agents Oldham and English. Guideline section 5K2.2 authorizes an upward departure in situations where the applicable offense guideline does not provide for a bodily injury adjustment. Streit does not challenge the factual circumstances on which the district court based its decision to depart. The first two prongs of the *Lira–Barraza* analysis are thus satisfied.

The effect of the district court's physical injury departure was to increase Streit's sentence from a range of 30–37 months to a range of 46–57 months. The court justified the degree of this departure by analogy to U.S.S.G. § 2A2.2 (Aggravated Assault), which provides for a two-level increase when a defendant's aggravated assault results in bodily injury. S.T. 55. In arriving at its effective four-level increase, the district court apparently multiplied the two-level increase it derived by analogy from section 2A2.2 by the number of victims involved. S.T. 54–59.

■ The district court's approach was not consistent with the overall structure of the guidelines. If the Sentencing Commission had provided for a two-level bodily injury adjustment in U.S.S.G. § 2A2.4 (Obstructing or Impeding Officers)—the section under which Streit was sentenced—then the court could have added a two-level increase for each of Streit's assault convictions. These increases, however, still would have resulted in only a two-level *net* increase in Streit's offense level for sentencing purposes once the district court grouped the two convictions pursuant to U.S.S.G. § 3D1.4. Because section 2A2.4 in fact does not provide for any bodily injury adjustment, the trial court could take account of this circumstance only by way of a departure under section 5K2.2 at the end of the sentencing computation. *See* U.S.S.G. § 1B1.1 (specifying the order in which the guidelines are to be applied).

■ The fact that a sentencing court takes account of a particular aggravating circumstance at the end of its sentencing calculations, via a departure, rather than at the beginning should not permit it to double the impact of that circumstance on the defendant's ultimate sentence.[4] Here, the district court properly drew an analogy to a provision of the guidelines dealing with assaults that result in physical injury. The court misapplied the analogy, however, because it misunderstood the manner in which the analogous guideline provision would have affected Streit's sentence. The purpose of our requirement that sentencing departures be guided by analogy to other guideline provisions is to ensure that the congressional objectives of uniformity and proportionality in sentencing are not defeated by unguided departures. *See United States v. Pearson*, 911 F.2d 186, 190–91 (9th Cir.1990) (stating that departure by analogy need not be "on a strict proportional basis" to the guidelines sentence, but vacating a sentence that was "significantly greater" than the range for the most nearly analogous offense level). Because the district court justified the degree of its physical injury departure on the basis of a

---

4. The guidelines do allow for departure in cases of physical injury to more than one person. *See* U.S.S.G. § 5K2.0. Such a departure would not be not warranted in the present case, however, because Streit was convicted on separate counts with respect to each victim.

flawed analogy, we find the departure unreasonable under the third prong of *Lira–Barraza.*

### D. *The Criminal History Departure*

The district court justified the remainder of its upward departure on the ground that Streit's criminal history category of VI significantly underrepresented his past criminal conduct and the likelihood that he would commit further crimes. Specifically, the court found that because a number of Streit's prior sentences had been consolidated, much of Streit's prior criminal conduct was not reflected in the calculation of his criminal history points under U.S.S.G. § 4A1.1. S.T. 80.

Streit began with an offense level of 12 because of his career offender status. As discussed above, the district court then imposed an upward departure equivalent to four offense levels to account for the physical injury to the two FBI agents. We view the remainder of the court's upward departure—from a recommended range of 46–57 months to Streit's ultimate assault sentence of 72 months—as reflecting the court's departure based on Streit's criminal history. *See* U.S.S.G. Ch. 5, Pt. A, at 5.2 (Sentencing Table).

Streit argues that his sentence should be vacated because the district court failed to articulate reasons for the extent of its upward departure based on criminal history. Streit raises an issue that has not previously been addressed by this circuit in a published opinion—namely, in what manner should a district court justify the degree of an upward departure based on the inadequacy of a defendant's criminal history category when the defendant already is in category VI? We attempt to shed some light on that question as we proceed through the *Lira–Barraza* analysis.

#### 1. Authority to depart

The Sentencing Guidelines make clear that an upward departure is warranted when "reliable information indicates that the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3 (Policy Statement). We have held that an upward departure based on the inadequacy of a defendant's criminal history category is proper only in those limited circumstances where the defendant's criminal record is "significantly more serious" than that of other defendants in the same category. *United States v. Singleton,* 917 F.2d 411, 412 (9th Cir.1990); *see also United States v. Brady,* 928 F.2d 844, 853 (9th Cir.1991).

Such departures involve two steps. First, to aid in achieving the congressional goal of eliminating unwarranted sentencing disparity and to facilitate meaningful appellate review, the district court must specify the events in the defendant's criminal history that it believes are inadequately represented in the guidelines criminal history calculation. *United States v. Hoyungowa,* 930 F.2d 744, 747 (9th Cir. 1991); *United States v. Cervantes–Lucatero,* 889 F.2d 916, 918 (9th Cir.1989); *United States v. Wells,* 878 F.2d 1232, 1232–33 (9th Cir.1989) (per curiam). The district court may build the appropriate factual record by adopting a presentence report (PSR) that has made specific findings of fact regarding the defendant's criminal history that support the decision to depart. *Singleton,* 917 F.2d at 412–13; *United States v. Gayou,* 901 F.2d 746, 748–49 (9th Cir.1990).

Second, the sentencing court must explain the extent of its upward departure by analogy to the guidelines range for defendants in higher criminal history categories. *United States v. Faulkner,* 952 F.2d 1066, 1071 (9th Cir.1991); *United States v. Montenegro–Rojo,* 908 F.2d 425, 431 (9th Cir. 1990); *Cervantes–Lucatero,* 889 F.2d at 918–19 (9th Cir.1989). We do not search the record for permissible reasons for departure; we consider the reasons actually articulated by the district court both for the departure and for the extent of the departure. *Faulkner,* 952 F.2d at 1071; *Cervantes–Lucatero,* 889 F.2d at 919.

#### a. *Basis for an upward departure from category VI*

The guidelines identify prior consolidated sentences for "independent crimes commit-

ted on different occasions" as one possible justification for an upward departure based on the inadequacy of a defendant's criminal history category. *See* U.S.S.G. § 4A1.3(b). The commentary accompanying section 4A1.2 counsels that

> [t]he court should be aware that there may be instances in which this definition [of related cases] is overly broad and will result in a criminal history score that underrepresents the seriousness of the defendant's criminal history and the danger that he presents to the public. For example, if the defendant commits a number of offenses on independent occasions separated by arrests, and the resulting criminal cases are consolidated and result in a combined sentence of eight years, counting merely three points for this factor will not adequately reflect either the seriousness of the defendant's criminal history or the frequency with which he commits crimes. In such circumstances, the court should consider whether departure is warranted. *See* § 4A1.3.

U.S.S.G. § 4A1.2, comment. (n. 3).[5] *See also United States v. Bishop*, 921 F.2d 1068, 1071–72 (10th Cir.1990) (holding that upward departure under section 4A1.3 was justified on the basis of prior consolidated sentences), *cert. denied*, —— U.S. ——, 111 S.Ct. 2034, 114 L.Ed.2d 119 (1991); *United States v. Ocasio*, 914 F.2d 330, 335–36 (1st Cir.1990) (same).

### b. *Justification for departing in Streit's case*

██ The Sentencing Commission specifically considered the possibility that in certain situations category VI might not adequately reflect a defendant's prior criminality and recidivist tendencies. The Commission stated that

> there may, on occasion, be a case of an *egregious, serious* criminal record in which even the guideline range for a Category VI criminal history is not adequate to reflect the seriousness of the defendant's criminal history. In such a

case, a decision above the guideline range for a defendant with a Category VI criminal history may be warranted. U.S.S.G. § 4A1.3 (emphasis added). *See United States v. Singleton*, 917 F.2d at 413 (affirming an upward departure from category VI).

Streit has a long and violent criminal history. His record reveals nine major criminal episodes, for which he has been convicted of some 17 different offenses. He was first sentenced in 1978 to five years in prison for armed robbery. He served that sentence concurrently with sentences for auto theft, two counts of second degree burglary, and one count of receiving stolen property. Streit received three criminal history points for this sentence. PSR at 7–8; U.S.S.G. § 4A1.1(a). In 1983, Streit was convicted of first degree murder and attempted robbery. Streit was subsequently convicted of kidnaping, burglary, auto theft, three counts of robbery, and three counts of armed criminal action. All of these convictions were consolidated into a single ten-year term of confinement, for which Streit also received just three criminal history points under the guidelines. PSR at 8–9. Streit committed the instant offenses while on parole and while charges were pending against him in Missouri for armed robbery and assault. PSR at 9–10.

The district court adopted the findings of the presentence report and explained its reasons for departing as follows:

> THE COURT: With respect to the criminal history category, the Court makes an upward adjustment from criminal history category six to a criminal history Roman numeral IX, it being the judgment of the Court that the upward adjustments are appropriate to account for all of the relevant conduct, including the adequacy or inadequacy, as I would characterize it, of the criminal history points that were given or afforded, previously, considering the fact that the defendant had a number of violent—convictions for violent crimes, but received consolidated sentences.

---

5. Similarly, U.S.S.G. § 4A1.3 includes as an example of underrepresentation a situation where the defendant "had received a prior consolidat-

ed sentence of ten years for a series of serious assaults."

S.T. 80. The district judge properly concluded that Streit's criminal record was sufficiently "egregious" to justify an upward departure pursuant to U.S.S.G. § 4A1.3.

### 2. Factual findings

Streit does not challenge the district court's factual findings or the presentence report's account of his criminal history, which the district judge adopted, and we find no error. Our focus thus turns to the third part of the *Lira–Barraza* analysis, the reasonableness of the extent of the district court's departure based on Streit's criminal history.

### 3. Reasonableness of the degree of departure

The guidelines instruct that a sentencing court departing upward on the basis of the inadequacy of a defendant's criminal history category should "use, as a reference, the guideline range for a defendant with a higher ... criminal history category." U.S.S.G. § 4A1.3. We have interpreted this section to require that when a district court departs upward on the ground that a defendant's criminal history category underrepresents the defendant's past criminal conduct, the degree of departure must be guided by analogy to higher criminal history categories. *Faulkner*, 952 F.2d at 1071; *Pearson*, 911 F.2d at 190–91; *Cervantes-Lucatero*, 889 F.2d at 919. If the district court fails to articulate reasons for the extent of its departure or if the analogy is not reasonable, we must vacate and remand. *United States v. Montenegro-Rojo*, 908 F.2d at 431.

### a. *Possible analogies*

■ Because Streit was already in category VI, the district court could not readily engage in this type of departure by analogy in his case for the simple reason that there were no higher criminal history categories left. The guidelines do not tell us

where to look for analogies in such situations. Examination of the sentencing table reveals that a district court generally may move to a higher sentencing range either by increasing a defendant's criminal history category and thereby moving horizontally along the sentencing table from left to right, or by increasing the defendant's offense level and moving vertically down the table. *See* U.S.S.G. Ch. 5, Pt. A, at 5.2. Other circuits that have considered the question have invoked both types of analogies in reviewing category VI departures.

The Seventh and Tenth Circuits have endorsed efforts to extrapolate along the horizontal axis of criminal history categories. In *United States v. Schmude*, 901 F.2d 555 (7th Cir.1990), the court held that the reasonableness of the degree of a departure from category VI may be reviewed by reference to the "structure of the Sentencing Table." *Id.* at 560. Observing that for any given offense level, the recommended sentencing ranges increase roughly ten to fifteen percent from one criminal history category to the next higher category, the Seventh Circuit concluded that "[i]n the case of a Category VI defendant, a sentencing judge can use this ten to fifteen percent increase to guide the departure." *Id.* Relying on *Schmude*, the Tenth Circuit in *United States v. Jackson*, 921 F.2d 985 (10th Cir.1990) (en banc), held that a sentencing court departing from category VI may "assign points to the elements of a defendant's criminal history that warrant a departure" to derive a new criminal history score, and then "calculate an analogous sentencing range by referring to the increments between categories in the Guidelines sentencing table." *Id.* at 993.[6]

The Seventh Circuit also has voiced its approval of departures beyond category VI based on "vertical" analogies to higher offense levels. In *United States v. Ferra*, 900 F.2d 1057 (7th Cir.1990), Judge Easterbrook noted that the vertical increments on the sentencing grid are "identical" to the

---

**6.** The Tenth Circuit also has suggested that "the career offender category may provide the appropriate analogy in some cases." *Jackson*, 921 F.2d at 993 (citation omitted); *see also United States v. Gardner*, 905 F.2d 1432, 1437–39 (10th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 202, 112 L.Ed.2d 163 (1990). Because Streit already has been classified as a career offender, this approach would have no application to his resentencing.

horizontal increments and concluded that "[a] judge who runs out of criminal history levels may read down to find the next higher range." *Id.* at 1062; *see also United States v. Scott,* 914 F.2d 959, 965 (7th Cir.1990). A number of circuits have condemned this resort to vertical analogies on the ground that the guidelines nowhere recommend it and that "[a]rbitrarily moving to a new offense level when the highest criminal history category proves inadequate would skew the balancing of factors which the Commission created in the Sentencing Table." *United States v. Roberson,* 872 F.2d 597, 607–08 (5th Cir.), *cert. denied,* 493 U.S. 861, 110 S.Ct. 175, 107 L.Ed.2d 131 (1989); *see also United States v. Molina,* 952 F.2d 514, 521–22 n. 8 (D.C.Cir.1992); *United States v. Thornton,* 922 F.2d 1490, 1494 (10th Cir.1991); *United States v. Russell,* 905 F.2d 1450, 1456 (10th Cir.), *cert. denied,* — U.S. ——, 111 S.Ct. 267, 112 L.Ed.2d 224 (1990).

Finally, some courts have abandoned the search for suitable analogies in favor of what might be called a pure common law approach to reasonableness. Under this approach, the district court states reasons for the degree of its departure, and the appellate court relies solely on its "own judgment as to whether the sentence imposed is proportional to the crime committed, in light of the past criminal history." *United States v. Bernhardt,* 905 F.2d 343, 346 (10th Cir.1990); *see also United States v. Ocasio,* 914 F.2d 330, 337 (1st Cir.1990). The apparent hope is that an initial batch of appellate pronouncements on reasonableness eventually will generate a body of rules to circumscribe the discretion of trial courts departing in these circumstances.

While we do not believe the Sentencing Commission intended to impose any particular mechanical formula on trial judges who exercise their discretion to depart upward from category VI in appropriate circumstances, we also do not believe that Congress's goal of bringing uniformity and proportionality to the sentencing process would be well served were we to abandon our requirement that sentencing departures be guided, so far as possible, by articulated analogies to other provisions of the guidelines. *See* 18 U.S.C. § 3553(a)(1), (6); *Lira–Barraza,* 941 F.2d at 749 ("The reasonableness of sentences determined without reference to identified standards would not be susceptible to rational review.").

We decline to mandate that sentencing judges adhere to any one particular approach to departures beyond category VI. We do require, however, that the sentencing court follow some reasonable, articulated methodology consistent with the purposes and structure of the guidelines.

### b. *The district court's horizontal analogy*

■ The district court sought to justify its criminal history departure by resort to both horizontal and vertical analogies. It appears that the probation officer prepared an extended sentencing table in which the mathematical relationship among the sentencing ranges for the extant offense levels and criminal history categories was extrapolated in a manner akin to that endorsed by the Seventh Circuit in *Schmude.* At one point, the district judge stated that he planned to make the upward departure by "increasing the criminal history category additional levels." S.T. 62. The judge then apparently disaggregated Streit's prior consolidated sentences to derive a new criminal history point total. At sentencing, the court and counsel repeatedly made reference to hypothetical criminal history categories of IX, X, and XII. In determining Streit's sentence, the district judge remarked that he was increasing Streit's criminal history category from category VI to "category IX." S.T. 80.

The district judge's attempt to link the magnitude of his departure to the structure of the sentencing table was commendable. Such an approach has the virtue of preserving, at least to some degree, the relationship that the Sentencing Commission has determined should prevail between a defendant's criminal history and the severity of his sentence. *Cf. United States v. Molina,* 952 F.2d 514, 522 (D.C.Cir.1992) (commenting that the "percentage approach" to post-category VI departures described in

*Schmude* "appears to make the most sense").

We nevertheless must remand because the district court failed to explain adequately the reasoning process that led it to select the 72–month assault sentence it ultimately imposed. The record does not reveal how the district court calculated the extended criminal history categories upon which it relied, and the court did not provide any explanation why it deemed the intermediate categories between VI and IX to be inappropriate. Moreover, the court did not indicate which prior consolidated sentences it had determined were responsible for the underrepresentation of Streit's past criminal conduct, and it did not indicate how many additional criminal history points it was assigning to Streit. *See United States v. Notrangelo*, 909 F.2d 363, 366 (9th Cir.1990) (holding that it was error for the district court automatically to have taken all prior convictions into account in departing upward under section 4A1.3). We believe the district judge clearly was on the right track. His failure to give a more complete statement of reasons, however, makes it impossible for us to review the reasonableness of the extent of the departure in a meaningful way.

c. *The district court's vertical analogy*

█ As an additional justification for the extent of its departure, the district court drew an analogy to the guideline sentencing range for the separate offense of aggravated assault:

> THE COURT: And as I said earlier, those adjustments and the sentence then fit within the, I think, the guideline purposes and principles and would be comparable to the sentence for aggravated assault, in going through the guideline determinations that we have discussed previously.

S.T. 81. Faced with conceptual difficulty in moving laterally across the sentencing table, the district judge evidently chose a different and more serious offense to serve as a supplemental guide in increasing Streit's sentence. The guidelines do not condone this mode of reasoning.

The offense guideline for aggravated assault specifies a base offense level of 15, which is increased by four levels if a firearm is used. *See* U.S.S.G. § 2A2.2. For a defendant in category VI with an offense level of 19, the sentencing table prescribes a range of 63–78 months of imprisonment. In comparing Streit's ultimate sentence with the sentence Streit might have received for aggravated assault, the district court analogized to a wholly separate substantive offense that had been rejected by the jury.

The commentary to the offense guideline for aggravated assault defines that offense as "a felonious assault that involved (a) a dangerous weapon with intent to do bodily harm (*i.e.*, not merely to frighten), or (b) serious bodily injury, or (c) an intent to commit another felony." U.S.S.G. § 2A2.2, comment. (n. 1). At Streit's trial, however, the jury specifically *declined* to convict Streit of assault with a dangerous weapon and instead convicted on the lesser included offense of assault without a dangerous weapon.

█ The structure of the Sentencing Guidelines makes clear that the factors to be considered in departing from applicable criminal history categories are distinct from those relevant to departing from appropriate offense levels. Offense level departures are based on extraordinary aspects of the offense for which the defendant was convicted. *See* U.S.S.G. § 5K2.0. We agree with the D.C. Circuit that the guidelines "assume a basic dichotomy between conduct that is related to the current offense and conduct that is part of the defendant's criminal history." *United States v. Jones*, 948 F.2d 732, 739 (D.C.Cir. 1991); *see also United States v. Thornton*, 922 F.2d 1490, 1494 (10th Cir.1990) ("Prior criminal conduct reflecting on the adequacy of a defendant's criminal history category does not provide the basis for an *offense level* departure."). Indeed, in the instant case, the district court already had increased Streit's sentence—through the section 5K2.2 departure—to reflect the physical injury to the FBI agents.

Finally, we note that permitting departures by "vertical" analogy to more serious offenses suggests no obvious limit on the district court's discretion once the court determines that a defendant's criminal history category is inadequate. We therefore join those circuits that have rejected this approach to justifying upward departures from category VI.

## VII. CONCLUSION

We affirm Streit's conviction. Because the district court justified the degree of its sentencing departure by improper analogies to other guidelines provisions and failed adequately to explain the reasoning for its criminal history departure, we find the sentence defective under the third prong of *Lira–Barraza*. Accordingly, we vacate Streit's sentence and remand to the district court for further proceedings. We do not preclude a sentence approximating the one imposed, however, if the district court can identify in the record factors that make the sentence consistent with the guidelines.

AFFIRMED IN PART, VACATED IN PART, AND REMANDED.