990 F.2d 1264
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jesus MONDACA Sr. and Jesus Mondaca Jr., Defendants-Appellants.
 Nos. 91-50563, 91-50564.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted March 2, 1993.
Decided March 31, 1993.
 
 Before SCHROEDER, THOMPSON and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 In these consolidated appeals, Jesus Mondaca, Sr. and Jesus Mondaca, Jr. appeal from their convictions, following a joint jury trial, for conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846. Mondaca Sr. also appeals from his mandatory life sentence without possibility of parole, imposed pursuant to 21 U.S.C. § 841(b)(1)(A).
 
 
 3
 The Mondacas' convictions were the result of a sting operation involving Frank Cooney, a government informant and former drug dealer. Cooney testified that following his indictment for being a felon in possession of a firearm, he agreed to cooperate with federal drug agents and to investigate whether several of his former criminal associates were still involved in dealing drugs. The Mondacas engaged in a series of taped conversations with Cooney in February and March of 1989, in which they negotiated the sale of cocaine. Conversations with Joe Belmonte, another drug dealer involved with Cooney, were also recorded.
 
 
 4
 The Mondacas' case was originally assigned to Judge John S. Rhoades. On December 17, 1990, defendants' motion for a mistrial was granted on the grounds of jury attrition and the case scheduled for retrial. The case was reassigned to visiting Judge Jack E. Tanner. Trial was suspended from March 13-18 due to the illness of Edmundo Espinoza, counsel for Mondaca Jr. During jury deliberations, one juror called in sick. The district court excused the ill juror and ruled that deliberations would continue with eleven jurors. The district court sentenced Mondaca Sr. to life in prison without possibility of parole, and Mondaca Jr. to 151 months imprisonment. The Mondacas raise numerous issues on appeal. We affirm.
 
 
 5
 * The Mondacas contend that they were denied due process when the district court, in the presence of counsel but without the personal presence of the defendants, ordered the jury to continue deliberating with eleven jurors after one juror fell ill.
 
 
 6
 In reviewing whether a defendant's absence from a critical stage constituted error, this court has focused on (1) whether defendant likely would have objected to the dismissal of the juror, (2) whether such objection would have altered the district court's decision, and (3) whether there is reason to believe the verdict would have been different had the district court ruled differently. See United States v. Ahmad, 974 F.2d 1163, 1165 (9th Cir.1992).
 
 
 7
 In this case, we need not reach the question of whether the court's decision constituted a stage of trial requiring presence of counsel, see id., because the defendants' absence did not affect the outcome of either the decision or the trial and thus does not require reversal. There is no indication that a personal objection by the Mondacas would have overcome the district court's desire to avoid a mistrial. Given the strength of the evidence against the Mondacas, we do not believe that the juror's absence affected the verdict. Accordingly, the Mondacas were not denied due process. See id.
 
 II
 
 8
 The Mondacas contend that the district court abused its discretion by excusing the ill juror and proceeding with eleven jurors. However, the Federal Rules of Criminal Procedure allow the district court to choose this option. "[I]f the court finds it necessary to excuse a juror for just cause after the jury has retired to consider its verdict, in the discretion of the court a valid verdict may be returned by the remaining 11 jurors." Fed.R.Crim.P. 23(b). Rule 23(b) is designed to provide a remedy other than mistrial when one of the jurors is found to be unable to continue service on the jury. United States v. Egbuniwe, 969 F.2d 757, 760-61 (9th Cir.1992).
 
 
 9
 This was the Mondacas' second trial; the first trial had ended in mistrial due to juror attrition. In this case, it was not possible to predict the length of the juror's absence. Thus this case is distinguishable from United States v. Tabacca, 924 F.2d 906 (9th Cir.1991), where we reversed because the juror would definitely be available the next day. Under these circumstances, the district court did not abuse its discretion by excusing the ill juror and continuing deliberations with the remaining eleven jurors. See United States v. Dischner, 974 F.2d 1502, 1513 (9th Cir.1992), cert. denied, 61 U.S.L.W. 3582 (1993).
 
 III
 
 10
 The Mondacas contend that the indictment should have been dismissed because the government committed outrageous conduct by having its agent, Frank Cooney, "instigate, create and maintain" the conspiracy for which they were convicted.
 
 
 11
 However, the appellants have not shown that "the Government's conduct [is] so grossly shocking and so outrageous as to violate the universal sense of justice." United States v. Smith, 924 F.2d 889, 897 (9th Cir.1991). The government may use paid informants and undercover tactics to infiltrate existing criminal enterprises. See, e.g., United States v. Slaughter, 891 F.2d 691, 695-96 (9th Cir.1989), cert. denied, 112 S.Ct. 3053 (1992). The evidence showed that the Mondacas were part of a distribution network importing large amounts of cocaine for distribution in Southern California. There is no indication that Cooney had to "generate" a supply scheme or do anything other than offer to buy multiple kilograms of cocaine in order to secure an eager response from the Mondacas. This scheme did not amount to outrageous conduct.
 
 IV
 
 12
 The Mondacas contend that the district court did not properly instruct the jury as to the elements of the crime of conspiracy and erred by refusing their proffered instructions on unanimity and intent.
 
 
 13
 A defendant is entitled to an instruction on his theory of defense as long it has some foundation in the evidence. United States v. Streit, 962 F.2d 894, 898 (9th Cir.), cert. denied, 113 S.Ct. 431 (1992). The district court need not give a specific instruction proffered by the defendant if the instructions, taken as a whole, correctly explain the law. United States v. Mason, 902 F.2d 1434, 1438 (9th Cir.1990); see Streit, 962 F.2d at 899.
 
 
 14
 Here, the instructions as a whole adequately explained the elements of the crime and covered the theory of the defense. The district court's Instruction No. 10 stated the elements of conspiracy, including intent. Instruction No. 11 specified that a conspiracy must be a combination of two or more persons, and Instruction No. 17 explained that the government must prove the defendants acted with specific intent. The district court refused to supplement these instructions with the defendants' proffered instructions that "in order for [intent] to be proven, there must be a 'meeting of the minds' to carry out the illegal act" and that this "meeting of the minds" must be between "two or more persons" not including the government agent. Because the district court's instructions accurately stated the law, its refusal of the defendants' proffered instructions was not erroneous. See Streit, 962 F.2d at 899.
 
 
 15
 The Mondacas also contend that the district court should have supplemented its instructions with instructions designed to guarantee that the jury reach a unanimous decision that both defendants participated in the same conspiracy charged in the indictment, and conspired with someone other than the government agent. A specific unanimity instruction is required: (1) if the jury indicates, by note to the court, that it is confused by the nature of the conspiracy; (2) if the indictment is "sufficiently broad and ambiguous so as to present a danger of jury confusion"; or (3) if the evidence is so factually complex that jury confusion may occur. United States v. Anguiano, 873 F.2d 1314, 1319-20 (9th Cir.), cert. denied, 493 U.S. 969 (1989). None of these circumstances is present here. Accordingly, the district court did not err by refusing to give a unanimity instruction.
 
 V
 
 16
 The Mondacas contend that Judge Tanner should have recused himself from sentencing them because his behavior towards Mondaca Jr.'s counsel, Edmundo Espinoza, created an appearance of bias.
 
 
 17
 On March 12, 1991, the first day of the second trial began after Judge Tanner denied Espinoza's motion to withdraw as counsel for Mondaca Jr. On the morning of March 13, after being informed that Espinoza did not intend to appear, Judge Tanner directed the U.S. Marshals to find Espinoza, who was ill, and bring him to court. Counsel and the court argued over the procedures each should have followed to avoid Espinoza's being brought to court in the custody of the marshals. Judge Tanner required that Espinoza be examined at a local hospital in addition to being seen by Espinoza's own physician before accepting that he was too ill to appear.
 
 
 18
 28 U.S.C. § 455(a) directs a district judge to recuse himself from any proceeding in which his impartiality "might reasonably be questioned." Nevertheless, " '[p]arties cannot attack a judge's impartiality on the basis of information and beliefs acquired while acting in his or her judicial capacity.' " United States v. Monaco, 852 F.2d 1143, 1147 (9th Cir.1988) (quoting United States v. Frias-Ramirez, 670 F.2d 849, 853 n. 6 (9th Cir.), cert. denied, 459 U.S. 842 (1982)), cert. denied, 488 U.S. 1040 (1989).
 
 
 19
 The argument between counsel and the judge took place outside the presence of the jury. The trial proceedings reveal no indication that Judge Tanner was anything other than impartial towards the defendants, and the Mondacas do not offer any such evidence apart from adverse rulings on their post-trial motions. These motions lacked merit, and the Mondacas can show no prejudice with respect to sentencing. The district judge did not abuse his discretion by failing to recuse himself. See Monaco, 852 F.2d at 1147.
 
 VI
 
 20
 The Mondacas also allege two instances of prejudice arising from Judge Tanner's having conducted the trial. First, Judge Tanner allowed a witness to violate one of Judge Rhoades' earlier evidentiary rulings and then failed to grant the defense motion for mistrial based on this error, and second, Judge Tanner refused to allow an evidentiary hearing on the motion to dismiss for outrageous governmental conduct and refused to continue the motion hearing until counsel could review the trial transcript.
 
 
 21
 Judge Rhoades had ruled that Cooney could not testify to his pre-1983 dealings with Mondaca Sr. At trial, when Cooney testified about 1983, he stated: "We just started selling drugs again." However, the use of the word "again" was not prejudicial. See United States v. Domina, 784 F.2d 1361, 1372 (9th Cir.1986), cert. denied, 479 U.S. 1038 (1987). Given the strength of the evidence, the district court did not err by denying the motion for mistrial. See United States v. Davis, 932 F.2d 752, 761-62 (9th Cir.1991). Nor did any prejudice result from the denial of an evidentiary hearing and a continuance on the motion to dismiss for outrageous governmental conduct. See United States v. Bergman, 813 F.2d 1027, 1030 (9th Cir.), cert. denied, 484 U.S. 852 (1987).
 
 VII
 
 22
 The Mondacas claim they were selectively prosecuted in violation of their right to equal protection. To succeed on a claim of selective prosecution, the defendant must show "both 'that others similarly situated have not been prosecuted and [also] that the prosecution is based on an impermissible motive.' " United States v. Bourgeois, 964 F.2d 935, 938 (9th Cir.) (quoting United States v. Wayte, 710 F.2d 1385, 1387 (9th Cir.1983), affirmed 470 U.S. 598 (1985)), cert. denied, 113 S.Ct. 290 (1992). When inquiring into prosecutorial patterns, the courts must consider prosecutions over a "reasonable" period of time. Id. at 940.
 
 
 23
 The Mondacas contend that the "control group" of similarly situated persons includes only the persons who were implicated by Cooney's undercover activities. They argue that they were selectively prosecuted on the basis of their Hispanic identity because Joe Belmonte is white and was not prosecuted for his part in Cooney's attempts to negotiate cocaine sales.
 
 
 24
 The Mondacas' focus on a single investigation is unreasonably narrow. Moreover, the district court properly found that Belmonte was not "similarly situated" to the Mondacas within this group. The district court properly denied the motion to dismiss the indictment. See Bourgeois, 964 F.2d at 940-41.
 
 VIII
 
 25
 The Mondacas contend that their convictions should be reversed because the government failed to disclose that government witness Cooney received a $250,000 payment from the DEA. Before the first trial, the Mondacas made a discovery request for disclosure of benefits received by Cooney for his cooperation. After the first trial ended in mistrial, both parties discovered that the DEA field office in Spokane had requested approval of a reward of up to $250,000 for Cooney. The reward was rescinded after the U.S. Attorney's office in Spokane objected.
 
 
 26
 In a criminal prosecution, the defense is entitled to any material evidence known to the prosecution which may affect a witness' credibility. Giglio v. United States, 405 U.S. 150, 154-55 (1972); United States v. Jennings, 960 F.2d 1488, 1491-92 (9th Cir.1992). However, any possible Giglio violation in this case was cured before the beginning of the second trial. The defense had a full opportunity to impeach Cooney. The second jury had the information before it when reaching its verdict. The district court found no evidence to suggest that the oversight had been intentional. Under these circumstances, the district court did not abuse its discretion by denying the motion to dismiss the indictment. See Jennings, 960 F.2d at 1491-92.
 
 IX
 
 27
 The Mondacas contend that the evidence introduced at trial was insufficient to support their convictions because the prosecution did not prove a "meeting of minds" between the Mondacas and Cooney to distribute a specific amount of cocaine for a specific price.
 
 
 28
 This court reviews the sufficiency of evidence supporting a conviction to determine whether, " 'reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " United States v. Bishop, 959 F.2d 820, 829 (9th Cir.1992) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).
 
 
 29
 The jury had ample evidence from which to conclude that the Mondacas were engaged in a conspiracy with each other, along with unknown suppliers, to possess with intent to distribute cocaine. Here, Frank Cooney testified at length about his extensive involvement with drug trafficking, including a partnership with Mondaca Sr. beginning in approximately 1983. In addition to Cooney's testimony, the government introduced four tape-recorded conversations in which Mondaca Sr. discussed his access to large quantities of drugs and possible prices for a multi-kilogram cocaine sale, and four taped conversations in which Mondaca Jr. discussed his joint undertaking with Mondaca Sr. while negotiating to sell 12-15 kilograms of cocaine for $15,000 per kilogram. The jury also heard live testimony from Joe Belmonte and heard a taped conversation in which Mondaca Sr. admitted his dealings in large amounts of cocaine and his negotiations with Cooney, and stated his intent to kill Cooney in order to avoid going to jail for his drug activities.
 
 
 30
 The evidence was sufficient to support the verdict, and the district court did not err by denying the motion for acquittal. See United States v. Winslow, 962 F.2d 845, 851 (9th Cir.1992); United States v. Meyers, 847 F.2d 1408, 1412-13 (9th Cir.1988).
 
 X
 
 31
 Finally, Mondaca Sr. contends that his life sentence without possibility of parole violates the Fifth and Eighth Amendments. He argues that (1) the statute violates the Fifth and Eighth Amendments on its face, and (2) it violates the Fifth Amendment as applied to him because he was convicted for conspiracy and not for an offense involving any actual drugs.
 
 
 32
 21 U.S.C. § 841(b)(1)(A) provides that a person convicted of a felony offense involving five or more kilograms of cocaine, having previously been convicted of two or more felony drug offenses, shall be sentenced to a mandatory term of life in prison without possibility of release. This provision does not violate the Eighth Amendment prohibition against cruel and unusual punishment, and the mandatory nature of the sentence does not violate the Fifth Amendment by depriving the district court of discretion to impose an individualized sentence. United States v. Van Winrow, 951 F.2d 1069, 1071 (9th Cir.1991); see also Harmelin v. Michigan, 111 S.Ct. 2680, 2709 (1991) (mandatory sentence of life without possibility of parole for first-time drug offender not unconstitutionally disproportionate). A defendant convicted of a drug conspiracy is sentenced as though the object of the conspiracy had been completed. 21 U.S.C. § 846; United States v. Dabdoub-Canez, 961 F.2d 836, 838 (9th Cir.1992). Thus there was no constitutional error here.
 
 
 33
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3