**UNITED STATES of America, Plaintiff,**

v.

**Lavon HEATH, Defendant.**

**No. 90–8065–CR.**

United States District Court, S.D. Florida, West Palm Beach Division.

Nov. 30, 1993.

Thomas O'Malley, Asst. U.S. Atty., West Palm Beach, FL, for plaintiff.

Fletcher Peacock, Office of Federal Public Defender, Fort Lauderdale, FL, for defendant.

ROETTGER, Chief Judge.

The sentencing of defendant in the instant crack cocaine case caused the court to face squarely a gaping, inexplicable omission in the sentencing table of the Sentencing Guidelines.

### BACKGROUND OF THE CASE

Defendant was one of twenty persons indicted as part of a crack cocaine distribution ring operating in Lake Worth, Florida (a suburb of West Palm Beach). The case proceeded to a six-week long trial with 13 defendants commencing trial. Three defendants were dismissed by the court during trial for rank discovery violations on the part of the government. Six defendants were convicted, two defendants were acquitted completely and two defendants were acquitted on some counts, but faced a subsequent trial on counts that were severed out of the trial on defendants' motions.

Defendant Heath was convicted of Counts 1, 2, 13, 14 and 15.

Defendant raised three objections to the computations in the pre-sentence report. First, the court overruled defendant's objection asserting his cocaine base participation did not meet the 15 kilograms level of cocaine base required for a base offense level of 42. Defendant was the biggest purchaser of cocaine from the kingpin, Martin, and admits

to purchasing six kilograms monthly. More detailed findings were made from the bench at sentencing.

After hearing evidence at the time of sentencing, the court also overruled defendant's objection to the imposition of a two-level increase for managerial status because defendant rather clearly occupied such a role in this crack cocaine distribution network. For example, defendant headed the largest suborganization in this conspiracy.

Last, defendant objected to the pre-sentence report's denial of a two-level reduction for acceptance of responsibility. Defendant neither accepted responsibility nor expressed any remorse until the day before his scheduled sentencing. He meets none of the other criteria set forth in the Guidelines.[1] Further, his claim at allocution of being sad at what crack cocaine had done to his neighborhood and community and how sad it was that his customers were buying crack cocaine hardly lends support to his claim for a two-level reduction for acceptance of responsibility. His being "sad" had not halted his trafficking in crack. Consequently, after a hearing on these three points at the sentencing, the court overruled all of the objections.

That left Defendant's sentencing level at 44, which must be reduced to a level 43 under the sentencing guidelines.

## SENTENCING TABLE

This court will proceed to explain and articulate what it believes to be a reasonable methodology consistent with the purpose and structure of the Guidelines. *See U.S. v.*

*Streit,* 962 F.2d 894, 906 (9th Cir.1992) re: horizontal axis of sentencing tables.

Defendant managed to parlay a series of misdemeanors into enough criminal history points to qualify for a criminal history category of III. However, at level 43 it makes no difference what criminal history category is applicable because the only sentence that can be imposed is life imprisonment; under the federal Sentencing Guidelines, that means life without parole.

Defendant was 22 years of age when he committed the offenses for which he was convicted.

When the court reviewed the sentencing table in Chapter 5 of the Sentencing Guidelines, the court was struck by a strange aberration in the mathematical calculations: Level 42—what the defendant was desperately seeking by his objections—provided the possibility he could receive a sentence at the lower end of the guidelines range of 360 months to life; if that occurred, he would at least be eligible for gain time of approximately 15 percent for good behavior in prison. Under those circumstances, he would be released in about 25½ years. The next higher level, a sentencing level of 43, is a hope-shattering life sentence in all criminal history categories.

Because such a large and unexplained increase appears between Level 42 and Level 43, compared with the other levels of the sentencing table in Chapter 5 of the Sentencing Guidelines, the court became concerned that the Eighth Amendment's proscription against cruel and inhuman punishment was

---

1. An examination of § 3E1.1 of the Sentencing Guidelines does not show that defendant is entitled to the benefit of the application notes. The closest factor would perhaps be 1(a) about truthfully admitting the conduct comprising the offenses of conviction. His admission was, at best, oblique and then painfully tardy. He certainly did not qualify for sub-section (b) as to voluntary termination or withdrawal from the criminal conduct or association; he did not qualify under sub-section (d) as to voluntary surrender to the authorities promptly after the commission of the offense nor did he qualify for sub-section (e) as to voluntary assistance to the authorities in recovery of the fruits and instrumentalities of the offense as he did not reveal the location of any of the fruits of his criminal conduct. Sub-sections (c), (f) and (g) are inapplicable to this situation.

And, of course, he fails miserably under subsection (h) as to "the timeliness of the defendant's conduct in manifesting the acceptance of responsibility." because he did not acknowledge any guilt until the day before the sentencing date.

Application Note 2 is not to be ignored. "This adjustment is not intended to apply toward a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." The court acknowledges that conviction by trial does not automatically preclude a defendant from consideration for reduction of or acceptance of responsibility, but this defendant certainly does not qualify for the "rare situation" example or by any circumstances set forth in the instant case.

implicated when one moved from Sentencing Level 42 to Sentencing Level 43.

The court has set forth the sentencing table in full beginning with Offense Level 34, in order to demonstrate where the problem lies in the sentencing table and to explain how the court arrived at the sentence imposed.

| OFFENSE LEVEL | I (0 or 1) | II (2 or 3) | III (4,5,6,) | IV (7,8,9) | V (10,11,12) | VI (13 or more) |
|---|---|---|---|---|---|---|
| 34 | 151–188 | 168–210 | 188–235 | 210–262 | 235–293 | 262–327 |
| 35 | 168–210 | 188–235 | 210–262 | 235–293 | 262–327 | 292–365 |
| 36 | 188–235 | 210–262 | 235–293 | 262–327 | 292–365 | 324–405 |
| 37 | 210–262 | 235–293 | 262–327 | 292–365 | 324–405 | 360–life |
| 38 | 235–293 | 262–327 | 292–365 | 324–405 | 360–life | 360–life |
| 39 | 262–327 | 292–365 | 324–405 | 360–life | 360–life | 360–life |
| 40 | 292–365 | 324–405 | 360–life | 360–life | 360–life | 360–life |
| 41 | 324–405 | 360–life | 360–life | 360–life | 360–life | 360–life |
| 42 | 360–life | 360–life | 360–life | 360–life | 360–life | 360–life |
| 43 | life | life | life | life | life | life |

An examination of this sentencing table beginning with Sentencing Offense Level 34 reveals that the key to understanding the progressively heavier sentences as one moves from one offense level to the next higher one is to look at the lower figure in the imprisonment guideline range in Criminal History Category I.

For example, from Level 34 to Level 35, the interval is 17 months, i.e., the difference between the bottom two figures (151 vis-a-vis 168) of the respective imprisonment guideline ranges; from Level 35 to Level 36, the interval between the lower figures is 20 months; from Level 36 to 37 the interval is 22 months, i.e. the difference between the bottom two figures of the respective imprisonment guideline ranges: 188 vis-a-vis 210; when one moves from Level 37 to Level 38, the interval increases by three months to 25 months, when one moves from Level 38 to 39, the difference is 27 months and from Level 39 to 40 the difference is 30 months; the difference from Level 40 to Level 41 is 32 months and from 41 to 42 it is 36 months (the difference between 324 at the bottom of the guideline range for Level 41 and 360 at the bottom of the guideline range for Level 42). Then, for no apparent reason, it leaps to life imprisonment in all six categories.

One can readily observe that the increases in the increments beginning with Level 35 are as follows: 3,2,3,2,3,2,4—basically, an average incremental increase of 3.

The leap to life imprisonment in the Table does not consider the impact caused to a young defendant: it has a greater practical effect on a 25–year–old defendant compared with the effect on a 65–year–old defendant when one automatically imposes life at Level 43 rather than continuing the incremental trend found for the bottom of the ranges up to Level 42. The sentence ranges are the same in all six Criminal History Categories of Level 42: 360 to life.

Therefore, it follows that Level 43, instead of being automatically life, should be 399 months to life (360 plus the last increment of 36, plus the additional increment of three); Level 44 should be an increased interval of 42 months or a range of 441 months to life; then Level 45 should be an increase in the bottom interval of 45 months so that it would be 486 months to life and so forth proceeding down the sentencing table to the next higher offense level. Consequently, the court concluded that the proper range in the sentencing table should be 399 months to life for Offense Level 43 and imposed a sentence of 400 months imprisonment.[2]

**2.** The court realizes, in retrospect, that defendant's Total Offense Level originally was 44, but

Obviously, it would make little difference to a 65–year–old defendant whether the Guidelines range was only life or whether it was 486 months—life; but it would make a difference to a defendant only 25–years–old at sentencing, as is defendant Heath. There is an additional factor buttressing the vertical extrapolation done above: the fact that probation officers following the Guidelines in § 4A1.3, extrapolate on the horizontal axis of the Sentencing Tables when the criminal history points substantially exceed criminal history Category VI.

Hence, if the Criminal History points total 19, an evaluation computed by extrapolating a criminal history category of VIII by assuming 13 through 15 points are Category VI, 16 through 18 points equate to Criminal History Category VII, and 19 through 21 are considered as a Category VIII. All this despite the table's apparent cutoff at VI because that category is labelled as "(13 or more)".

This extrapolation of criminal history categories is used to support an upward departure because otherwise the criminal history category significantly understates a defendant's criminal history.

It should be noted that the undersigned judge is known by the defendants at the Metropolitan Correctional Center as the "Hanging Judge" (among other names). The title apparently was confirmed by an examination of this district's federal judges' sentencing records made by a local newspaper several years ago, which concluded the undersigned imposed the longest sentences in this district. It is a title the undersigned neither sought nor shrinks from. Despite that characterization, this court believes that there is an obvious omission at the more severe end of the sentencing tables and has sought to address it in this ruling.

DONE AND ORDERED.

it was automatically reduced by the Sentencing Guidelines to Level 43. Clearly, the court should have imposed a guideline range for Offense Level 44 which would be 441 months to life. Defen-

dant has received an obvious benefit, but this court would be happy to vacate the sentence, if necessary, to address the range of 441 months to life.