**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Joseph Alexander ARMSTRONG,
Defendant–Appellant.**

**No. 87–5006.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 8, 1989.

Decided March 13, 1990.

As Amended on Denial of
Rehearing May 1, 1990.

Certiorari Denied Oct. 1, 1990.
See 111 S.Ct. 191.

---

Steven O. Kramer, Pillsbury, Madison & Sutro, Los Angeles, Cal., for defendant-appellant.

Jean A. Kawahara, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellee.

Before BROWNING, BOOCHEVER and KOZINSKI, Circuit Judges.

BOOCHEVER, Circuit Judge:

Joseph Alexander Armstrong appeals his conviction on 15 counts of knowingly and willfully causing the making of false entries on federal firearms transaction records in violation of 18 U.S.C. §§ 2 & 922(m) (1982). Armstrong challenges an alleged amendment to the superseding indictment, the propriety of the jury instructions, and the district court's refusal to grant a mistrial in light of alleged juror misconduct. We affirm the decision of the district court.

## FACTS AND PROCEDURAL HISTORY

In 1983, Armstrong obtained the signatures of two friends and the forged signature of another on fifteen blank firearm transaction records. These records purported to document the sales of as many guns to these friends, although none of the friends intended to buy, nor did they receive, any guns. Armstrong presented these signed forms to John McGerty, a licensed gun dealer, who then delivered the fifteen weapons to, and accepted payment from, Armstrong.

Armstrong was originally charged on April 18, 1986, with one count of conspiracy and four counts of aiding and abetting the making of false entries in federal firearms transaction records in violation of 18 U.S.C. §§ 2(a) & 922(m). On July 11, 1986, the Government returned a superseding indictment against Armstrong, dropping the conspiracy and aiding and abetting charges and substituting fifteen counts alleging that Armstrong caused the making of the false entries under §§ 2(b) & 922(m).

On September 11, 1986, four days before the trial, the Government filed its trial brief in which it stated that it intended to proceed on alternate theories that Armstrong either caused or aided and abetted the false entries. Following the presentation of evidence, the district court instructed the jury on both causing and aiding and abetting over Armstrong's objection that any instruction on aiding and abetting was improper. Armstrong made only this general objection. He did not object to the wording or clarity of the aiding and abet-

ting instructions the court proposed and eventually gave the jury.

The jury returned a verdict of guilty on all fifteen counts. Prior to the reading of the verdict but after deliberations were finished, the jury foreman, juror Nolan, delivered a note to the court. The court inquired if the note had any effect on the verdict, and juror Nolan responded that it did not. After the verdict was read and the jury polled, the court inquired further about the note.

In the note, juror Nolan wrote that he heard a "muffled shout" of "he's guilty" shortly after the prosecution's opening statement but before any evidence was presented. Juror Hanley also admitted hearing the remark. These two jurors stated that they had discussed the remark only with each other, and that it did not affect their decision or the deliberations. The court then asked the jurors collectively whether they had heard the remark, and none responded that they had.

Under individualized questioning by the court, none of the other jurors admitted having heard the remark, but juror Black admitted that he had made a similar remark. Juror Black stated that he meant the remark as a joke, that he discussed it with none of the other jurors, and that he had otherwise followed the court's instructions and kept an open mind during deliberations. Alternate juror Pelletier, questioned a few weeks later, told the court that she had not heard the remark but had heard two of the jurors discussing it, one of whom (apparently juror Hanley) said to the other (apparently juror Black) that "another juror heard whatever he said and was upset about it."

Armstrong moved for a mistrial based on the juror misconduct. The judge denied this motion, stating that she did "not feel that Juror Black's conduct or statement affected [Armstrong's] fair trial." On November 17, 1986, the court imposed a thirteen-month suspended sentence and three years probation, the first six months of which were to be served in a community

treatment facility. Armstrong filed notice of this appeal the same day.

## DISCUSSION

### Amendment of the Indictment

■ Armstrong alleges that the Government materially amended the superseding indictment by implying an aiding and abetting charge. The superseding indictment specifically charged Armstrong with knowingly and willfully causing, under 18 U.S.C. § 2(b), the making of false entries in federal firearms transaction records in violation of 18 U.S.C. § 922(m). Section 922(m) makes it unlawful for a licensed gun dealer to make a false entry in any record which that dealer is required to keep by law. Section 2 provides in full:

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

18 U.S.C. § 2 (1982).

At trial, the Government proceeded on the theory that Armstrong could be found guilty of either causing the violation under § 2(b) or aiding and abetting the violation under § 2(a) because aiding and abetting is implied in every federal indictment, whether or not it is specifically mentioned. The district court agreed and instructed the jury accordingly. We review whether there has been a material amendment of an indictment de novo. *See United States v. Aguilar,* 756 F.2d 1418, 1421–22 (9th Cir. 1985).

■ Aiding and abetting is implied in every federal indictment for a substantive offense. *E.g., United States v. Gaskins,* 849 F.2d 454, 459 (9th Cir.1988). Armstrong claims, however, that such an impli-

cation is limited to situations in which a defendant has been indicted as a traditional principal.[1] Armstrong was not a licensed gun dealer and so could not have been indicted as a traditional principal. In these circumstances, according to Armstrong, either § 2(a) or § 2(b) was required in the indictment along with § 922(m). Therefore, the other subsection cannot be implied without materially amending the indictment because the elements of proof necessary to convict a defendant of aiding and abetting under § 2(a) differ from the elements necessary to convict a defendant of causing under § 2(b).

Armstrong correctly notes the conceptual difference between causing and aiding and abetting. "Under section 2(a), the government must prove that someone committed the substantive crime, although the failure to prosecute or to obtain a prior conviction of that individual does not preclude the conviction of the aider and abettor." *United States v. Causey,* 835 F.2d 1289, 1291 (9th Cir.1987). For example, if McGerty was a knowing participant in the falsification, Armstrong would have aided and abetted the commission of the crime. "Under section 2(b), however, the government need not prove that someone other than the defendant was guilty of the substantive crime." *Id.* at 1292. Thus, if McGerty was unaware that the firearm transaction records were falsified, Armstrong would have caused the offense. Despite this difference, however, courts have implied *both* subsections of § 2 in a federal indictment, whether or not they have been specifically charged:

In keeping with the provisions of § 2, it has long been held that an indictment need not specifically charge "aiding and abetting" or "causing" the commission of an offense against the United States, in order to support a jury verdict based upon a finding of either. All indictments must be read in effect, then, as if the alternatives provided by 18 U.S.C. § 2 were embodied in each count thereof.

---

1. Section 2 eliminates the common law distinction between "principal" and "accessory" and makes one who aids and abets or causes the commission of a crime punishable as a princi-

pal. To avoid confusion, therefore, we use the term "traditional principal" to refer to an individual that the common law would consider a principal.

*United States v. Lester*, 363 F.2d 68, 72 (6th Cir.1966), *cert. denied*, 385 U.S. 1002, 87 S.Ct. 705, 17 L.Ed.2d 542 (1967); *see Gaskins*, 849 F.2d at 459; *United States v. Krogstad*, 576 F.2d 22, 28–29 (3rd Cir. 1978). Moreover, the elements necessary to convict an individual as a traditional principal also differ from the elements necessary to show the individual aided and abetted that crime, *Gaskins*, 849 F.2d at 459–60, but this difference does not prevent aiding and abetting from being implied in every indictment for a substantive offense. The difference between causing and aiding and abetting alone, therefore, does not prevent either or both theories from being implied in an indictment.

Nor does the specific referral to § 2(b) in the superseding indictment of Armstrong preclude the implication of § 2(a). If both subsections are implied in every indictment, specifically mentioning one does not mean that the other cannot be implied. We were faced with a similar issue in *United States v. Roselli*, 432 F.2d 879 (9th Cir.1970), *cert. denied*, 401 U.S. 924, 91 S.Ct. 883, 27 L.Ed.2d 828 (1971). There, the indictment charged the defendant with aiding and abetting a substantive offense, but the trial judge refused to give a jury instruction on aiding and abetting, believing there was insufficient evidence to support that charge. Instead, the court instructed the jury that the defendant could be convicted of the offense only under a *Pinkerton* conspiracy theory, *i.e.*, "that [the] defendant could be found guilty of the substantive offenses with which he was charged if the evidence established that he had joined [an illegal] conspiracy and that the substantive offenses were committed in furtherance of it." *Id.* at 894 (citing *Pinkerton v. United States*, 328 U.S. 640, 647, 66 S.Ct. 1180, 1184, 90 L.Ed. 1489 (1946)). We rejected the defendant's argument that implying a *Pinkerton* theory in an indictment charging only aiding and abetting broadened the indictment or adversely affected his rights:

> A conspirator ... may be convicted on the *Pinkerton* theory without a specific allegation that a coconspirator committed the offense in furtherance of the conspiracy.
>
> Hence, the only possible basis for objection by [the defendant] is that the wording of the indictment somehow misled him to his prejudice. He appears to complain because the allegation that he aided and abetted the commission of the offenses caused him to come forward with a defense ... specifically directed to that theory of liability, but since he would have been exposed to liability on this theory in any event, the particularization did him no harm.

*Id.* at 895 (footnotes omitted). Similarly, both causing and aiding and abetting are implied in every indictment, and although causing was specifically charged in the indictment of Armstrong, "the language of the indictment charging him with [causing] was simply surplusage." *Id.* at 895 n. 27. As surplusage, then, the specific reference to causing does not prevent aiding and abetting from being implied.[2]

Armstrong argues, however, that he was not a licensed gun dealer and could not have been indicted as a traditional principal for a violation of § 922(m). Therefore, according to Armstrong, the inclusion of § 2(b) was an indispensable element of the indictment, not surplusage. Armstrong maintains that under these circumstances, because either § 2(b) causing or § 2(a) aiding and abetting had to be specifically charged in the indictment, the other cannot be implied.

While this is a clever argument, it is founded on the erroneous assumption

---

**2.** Armstrong also maintains that he was prejudicially misled by the Government's strategy. He claims he prepared a defense based on evidence that he had not caused the violations of § 922(m), only to be surprised a few days before trial with the Government's announced intention to proceed on alternate theories of causing or aiding and abetting. Armstrong, however, never moved to quash or dismiss the in-

dictment or for a continuance to allow more time to prepare for the "additional" charge of aiding and abetting. Under these circumstances, we fail to see how Armstrong was misled to his prejudice by the implication of aiding and abetting in the superseding indictment, particularly "since he would have been exposed to liability on this theory in any event." *Id.* at 895.

that the specific inclusion of § 2(b) in the indictment somehow alters the nature of the offense with which [Armstrong] is charged. In fact, the specific inclusion of § 2(b) is insignificant. Whether specified or not, § 2(b) is considered embodied in full in *every* federal indictment. Thus, [Armstrong's] indictment under §§ [922(m) ] *and* 2(b) is functionally identical to an indictment under § [922(m) ] alone.

*United States v. Michaels*, 796 F.2d 1112, 1118 (9th Cir.1986), *cert. denied*, 479 U.S. 1038, 107 S.Ct. 893, 93 L.Ed.2d 845 (1987) (emphasis in original and citations omitted).

Section 2 does not define a substantive offense, but rather "describes the kinds of individuals who can be held responsible for a crime; it defines the degree of criminal responsibility which will be attributed to a particular individual. The nature of the crime itself must be determined by reference to some other statute." *United States v. Grubb*, 469 F.Supp. 991, 996 (E.D. Pa.1979); *accord United States v. Kegler*, 724 F.2d 190, 200–01 (D.C.Cir.1984). In this case that statute is § 922(m). Whether Armstrong could be indicted as a traditional principal under § 922(m) is irrelevant. The substantive crime for which he was indicted was a violation of § 922(m), and the inclusion of § 2(b) in the indictment merely described the degree of his responsibility for that crime. The combination of §§ 2(b) and 922(m), while it clarified the fact that Armstrong could not be held responsible as a traditional principal, does not preclude the normal implication of other theories of responsibility. Implying aiding and abetting under § 2(a), therefore, did not amend the superseding indictment.

*Jury Instructions*

■ Armstrong argues that even if aiding and abetting was properly implied in the indictment, the jury instructions failed to distinguish between causing and aiding and abetting. Specifically, he maintains that the court failed to instruct the jury that it must find the existence of a knowing traditional principle before it could convict Armstrong of aiding and abetting. Therefore, the court's instructions errone-

ously relieved the Government of its obligation to prove an element of the offense and permitted the jury to find Armstrong guilty of aiding and abetting even if the jury believed that McGerty acted without the requisite intent when he made the false entries.

■ Jury instructions are generally reviewed for abuse of discretion and "are considered as a whole to determine if they are misleading or inadequate." *United States v. Spillone*, 879 F.2d 514, 525 (9th Cir.1989). "[W]hether a jury instruction misstated elements of a statutory crime is a question of law and is reviewed de novo." *Id.* De novo review, however, is only available when a proper objection has been made in the district court. "Federal Rule of Criminal Procedure 30 prohibits a party from assigning error 'unless that party objects thereto before the jury retires to consider the verdict, stating *distinctly* the matter to which that party objects and the *grounds* of that objection.'" *United States v. Kessi*, 868 F.2d 1097, 1102 (9th Cir.1989) (quoting Fed.R.Crim.P. 30) (emphasis added by the court).

■ Armstrong objected to the court's instruction on aiding and abetting on the grounds that *any* instruction on aiding and abetting was an improper departure from the indictment. He did not object to the wording of the final instruction given to the jury, nor did he direct the court's attention to the absence of a clear instruction on the elements required to convict on an aiding and abetting theory. In fact, defense counsel stated he had no objection to the instruction eventually given to the jury as a way for the court to handle the potential jury confusion arising from the absence of a charge of aiding and abetting in the indictment. Armstrong's only attempt to address the element he now disputes was contained in his proposed jury instruction number 8, which listed the elements of causing and incorrectly included the requirement that McGerty knowingly made the false entries. This instruction was later modified to remove this element without specific objection by defense counsel, or suggestion that the element should be

retained and applied to the aiding and abetting charge.

Under these circumstances, Armstrong cannot be said to have *distinctly* stated the matter to which he objected, nor were the grounds he now claims raised before the district court. In the absence of a proper objection, we review jury instructions for plain error. *Kessi,* 868 F.2d at 1102. Under this standard, an aiding and abetting instruction is sufficient if it includes the statutory language and states that someone must have committed the crime charged. *United States v. Jones,* 425 F.2d 1048, 1056–57 (9th Cir.), *cert. denied,* 400 U.S. 823, 91 S.Ct. 44, 27 L.Ed.2d 51 (1970); *United States v. Rosa,* 705 F.2d 1375, 1381 (1st Cir.1983). Here, the instructions paraphrased the language of the statute, stating that the jury could find Armstrong guilty if it found beyond a reasonable doubt that he "aided, abetted, counseled, commanded, induced, or procured the commission of an offense against the laws of the United States." The instructions also provided:

> In order to aid and abet another to commit a crime, it is necessary that the accused willfully associate himself in some way with the criminal venture and willfully participate in it as he would in something he wishes to bring about; that is to say, he willfully seeks by some act or omission of his to make the criminal venture succeed.

The implication of these instructions is that a crime must have been committed by some other person before Armstrong may be convicted of aiding and abetting. Thus, the jury instructions included the language of the statute and implied that someone must have committed the crime charged.

Armstrong contends that this implication is negated by a later instruction which stated that the jury could find Armstrong guilty regardless of whether McGerty acted knowingly and intentionally or whether he acted innocently in making the false entries. Thus, according to Armstrong, the jury could have convicted him of aiding and abetting the false entries without finding that McGerty committed the charged crime. Armstrong, however, did not specifically object to the instructions on the grounds he now urges. We find plain error only in exceptional circumstances, and "it must be highly probable that the error materially affected the verdict." *Kessi,* 868 F.2d at 1102–03. Based on our review of the record, we believe the jury would have found Armstrong guilty beyond a reasonable doubt of aiding and abetting the offense if it believed McGerty acted knowingly. On the other hand, the jury would have found Armstrong guilty of causing the false entries if the jury believed that McGerty was innocent. *See Causey,* 835 F.2d at 1291–92. Under these circumstances, any error in the challenged instructions did not materially affect the verdict and, therefore, did not constitute plain error.

### Juror Misconduct

 Armstrong claims the district court erred by refusing to grant his motion for a mistrial because of juror misconduct. Armstrong argues that his right to a fair and impartial jury was violated by juror prejudice, not only from juror Black's shouted comment, but from juror Hanley's lack of candor when she denied discussing the comment with anyone but juror Nolan. "We review alleged jury misconduct independently, in the context of the entire record. We accord substantial weight to the trial judge's conclusion as to the effect of alleged juror misconduct ... [especially] if the trial court has conducted an evidentiary hearing." *United States v. Madrid,* 842 F.2d 1090, 1092 (9th Cir.), *cert. denied,* 488 U.S. 912, 109 S.Ct. 269, 102 L.Ed.2d 256 (1988) (citations omitted).

"The test is whether or not the misconduct has prejudiced the defendant to the extent that he has not received a fair trial." *United States v. Klee,* 494 F.2d 394, 396 (9th Cir.), *cert. denied,* 419 U.S. 835, 95 S.Ct. 62, 42 L.Ed.2d 61 (1974). Here, the district court conducted two evidentiary hearings, extensively questioning the jurors and an alternate juror about every aspect of the alleged misconduct and its possible effect on each juror's deliberations and decision. Based on this inquiry, the court decided that any misconduct did not affect Armstrong's right to a fair trial. "When a wise and experienced judge, who presided at the trial and observed the jury, comes to such a conclusion, it is not for us to upset it. The trial judge 'was in a better position than we are to determine whether what happened was prejudicial.'" *Klee,* 494 F.2d at 396 (quoting *United States v. Goliday,* 468 F.2d 170, 172 (9th Cir.1972), *cert. denied,* 410 U.S. 934, 93 S.Ct. 1386, 35 L.Ed.2d 597 (1973)). We thus agree with the district court that any juror misconduct did not deny Armstrong a fair trial. His motion for mistrial was properly denied.

## CONCLUSION

Aiding and abetting under 18 U.S.C. § 2(a) is implied in every federal indictment for a substantive offense. The specific inclusion of causing under § 2(b) in the superseding indictment of Armstrong, even though he could not have been convicted as a traditional principal, does not change this general rule. There was therefore no amendment to the superseding indictment. In addition, the jury instructions were sufficient in the absence of a distinct objection on specific grounds, having quoted § 2(a) and implied that someone had to have committed the underlying offense if Armstrong was to be found guilty of aiding and abetting. Finally, any misconduct by members of the jury did not deprive Armstrong of a fair trial, and the district court properly denied his motion for a mistrial.

AFFIRMED.