UNITED STATES of America,
Plaintiff–Appellee,

v.

Jerry SPAN, Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Darlene SPAN, Defendant–Appellant.

Nos. 90–10284, 90–10285.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Oct. 10, 1991.

Decided July 8, 1992.

Alan M. Dershowitz, Cambridge, Mass., for defendant-appellant.

Janet L. Patterson, Asst. U.S. Atty., Phoenix, Ariz., for plaintiff-appellee.

Before: SKOPIL, PREGERSON, and O'SCANNLAIN, Circuit Judges.

PREGERSON, Circuit Judge:

Jerry and Darlene Span, brother and sister, appeal their convictions following a jury trial of assault on a federal officer in violation of 18 U.S.C. § 111 (1988).[1] Mr. Span was fined $1,000 and sentenced to 30 months probation with the special condition that he serve four months under house arrest. Ms. Span was fined $6,000 and sentenced to 36 months probation with special conditions that she serve three months in a community treatment center and three months house arrest.

---

**1.** Section 111 reads, in pertinent part: "Whoever ... forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties, ... shall be fined under this title or imprisoned not more than three years, or both." 18 U.S.C. § 111.

We grant the Spans' request to expunge the references to 18 U.S.C. § 1114 (1988) in their convictions to avoid any inference that they were convicted for both offenses. *See Potter v.* *United States,* 691 F.2d 1275, 1281 (8th Cir.1982) ("Because of the possibility that the judgment allows an inference that two offenses were committed, the enumeration of both statutes [18 U.S.C. §§ 111 and 1114] in the judgment was improper.... [T]he reference to 18 U.S.C. § 1114 should be expunged...."). Section 1114 defines the offense of killing a federal officer and also defines the class of persons protected by section 111. The Spans did not kill the marshals, and therefore did not violate section 1114.

On appeal, the Spans contend that the trial court made several errors when instructing the jury. While in theory some of the Spans' legal arguments may have merit, we do not find plain error in the district court's jury instructions in light of the evidence presented by the defense. The Spans also contend that the trial court erred when it refused to grant their motion to dismiss the indictment on the ground that the government destroyed evidence. We disagree, and affirm the district court's decision denying the motion to dismiss. Finally, the Spans argue that their convictions must be reversed because the government failed to comply with the requirements of the Jencks Act, 18 U.S.C. § 3500 (1988), and of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). We do not find that the district court's rulings on these issues were clearly erroneous. Accordingly, we affirm the Spans' convictions.

## BACKGROUND

This case began when deputy U.S. Marshals Garry Grotewold and David Dains ("the marshals") were seeking a 63 year-old escaped fugitive named Mickey Michael, who they believed to be armed and dangerous. On April 7, 1988, the marshals drove to an address in Phoenix, Arizona where, according to a lead, Michael might be hiding. The marshals wore plain clothes and drove an unmarked car. Each carried a gun.

The rest of the story is hotly disputed. According to the marshals, Darlene Span met the marshals almost immediately after they got out of their car. The marshals testified that they told Ms. Span that they were looking for Mickey Michael and handed her a wanted flyer with Michael's picture. Ms. Span told them that the Mickey Michael she knew was out of town and that he was not the man in the wanted picture. Ms. Span then allegedly took the flyer from Marshal Dains and began to walk away.

Marshal Grotewold walked past Ms. Span and blocked her path by resting his arm against a truck. When Grotewold asked her what she was doing, Ms. Span responded that she was going to make a copy of the flyer. Grotewold told her she could not make a copy, and took the flyer from her. About that time, Jerry Span, Darlene's brother, approached Grotewold and demanded that the marshals leave his property.

Grotewold testified that he told Mr. Span that they were federal agents. Mr. Span allegedly hit Grotewold in the chest. Grotewold responded by pushing Mr. Span back and warning him that he had no business in the matter. Grotewold testified that he felt something at his waistband and thought that Mr. Span was trying to take the marshal's gun. Grotewold struck Mr. Span with his arm and told him that he was under arrest.

Marshal Dains attempted to handcuff Mr. Span. Meanwhile Darlene Span allegedly attacked Dains from behind and clawed at his face. Dains moved Ms. Span onto a car to make it easier to handcuff her. Ms. Span jumped down onto Dains' leg, causing a loud pop and a great deal of pain in his knee.

A witness at the scene called the local Phoenix police, and the officers helped arrest the Spans. Phoenix police then took the Spans to Maricopa County Jail for booking. Both marshals suffered injuries.

The Spans tell a different story, and presented testimony from two witnesses to support their version. The witnesses were customers of the Spans' building supply business. Both were near the fracas from the time it began.

Defense witnesses testified that Ms. Span greeted the officers politely and asked if she could help them. According to their testimony, the marshals did not identify themselves. Rather, the marshals simply asked Ms. Span if she recognized the man in the wanted flyer. Ms. Span purportedly told them that she had a brother named Mickey Michael, but that she had never seen the man in the wanted photo. Apparently, Ms. Span's brother is about 30 years younger than the man pictured on the flyer. The witnesses testified that Mr. Span also told the marshals that he had

never seen the man in the picture. According to defense testimony, the Spans handed the photo back to the marshals and attempted to return to their customers without at any time assaulting either Grotewold or Dains.

Defense witnesses testified that Marshal Dains ran up to Ms. Span as she walked away, grabbed her from behind by her pony-tail, locked his arm over her head, and dragged her in this manner into a fence. At the same time, Grotewold tackled Mr. Span from behind, and held him to the ground. According to defense testimony, the marshals held the Spans in painful "chokeholds" for about ten minutes until Phoenix police officer Bill Jenkins arrived.

After a five-day jury trial, the Spans were convicted of assaulting a federal officer in violation of 18 U.S.C. § 111. The Spans are presently released on their own recognizance.

## DISCUSSION

### I. Jury Instructions

The Spans assert that the trial court made several errors when instructing the jury on defenses to the charge of assaulting a federal officer under 18 U.S.C. § 111. First, the Spans contend that the district court erred by refusing to give their general self-defense instruction and giving Ninth Circuit Model Instruction 8.02B in its place. Second, the Spans contend that the district court erred by refusing to give an instruction on the right to resist an arrest not supported by probable cause. Third, the Spans contend that the district court improperly directed the jury to find that the marshals were acting in performance of official duties.

### A.

#### 1.

■ The Spans argue that the district court erred when it gave the Ninth Circuit model instruction on defenses to section 111 in place of the general self-defense instruction offered by the Spans.[2] According to their argument, Ninth Circuit Model Instruction 8.02B was given erroneously because it forecloses acquittal even in cases where a jury could find that a defendant used only reasonable force to repel excessive force used by federal law enforcement officers.

The district court gave the following modified version of Ninth Circuit Model Instruction 8.02B (West 1989):

> The defendants have offered evidence of having acted in self-defense. It is a defense to the charge as to a particular defendant *if* (1) that defendant did not know that Garry Grotewold and David Dains were federal officers (2) that defendant reasonably believed that use of force was necessary to defend oneself against an immediate use of unlawful force *and* (3) that defendant used no more force than appeared reasonably necessary in the circumstances.

\* \* \* \* \* \*

> In addition to proving all the elements of the crime beyond a reasonable doubt the government must also prove beyond a reasonable doubt *either* (1) that the defendants knew that Garry Grotewold and David Dains were federal officers *or* (2) that the defendants did not reasonably believe force was necessary to defend against an immediate use of unlawful force *or* (3) that the defendants used more force than appeared reasonably necessary in the circumstances.

(emphasis added).

This instruction correctly states an affirmative defense to section 111 that the Supreme Court set out in *United States v. Feola*, 420 U.S. 671, 684, 95 S.Ct. 1255, 1263–64, 43 L.Ed.2d 541 (1975). In *Feola*, the Supreme Court held that, in certain situations, knowledge of the officer's official status was not an element of the offense. *Id.* The Court added, however,

---

**2.** The Spans offered the following general self-defense instruction based on Ninth Circuit Model Instruction 6.05 (West 1989): "The defendants have offered evidence of having acted in self-defense. Use of force is justified when a person reasonably believes that it is necessary for the defense of oneself or another against the immediate use of unlawful force."

that "an honest mistake of fact [about the victim's identity as a federal officer] would not be consistent with criminal intent." *Feola*, 420 U.S. at 686, 95 S.Ct. at 1264.

In *Feola*, the Court was not presented with a situation involving alleged use of excessive force by a federal law enforcement officer. The Spans argue that the model instruction based on *Feola* can actually preclude acquittal based on an excessive force theory of defense. We agree.

According to the plain terms of the model instruction, the jury could not acquit the Spans on grounds of self-defense *even if* the jury: 1) believed that the exercise of force by Marshals Dains and Grotewold was unlawful because it was excessive, and 2) found that the Spans reasonably defended themselves from that unlawful exercise of force. The revised model instruction given by the district court allows the government to defeat an excessive force theory of defense merely by proof beyond a reasonable doubt that the defendant knew that the person that she allegedly assaulted was a federal law enforcement officer.

We agree with the Spans that the model instruction would be inappropriate in a case where a defendant's theory of the case is self-defense against the use of *excessive* force by a federal law enforcement officer. As the Spans point out, the model instruction requires the jury to reject this theory of defense as long as the government proves beyond a reasonable doubt that the defendant knew that the person she is

charged with assaulting was a federal law enforcement officer.

■ As such, giving the model instruction is tantamount to refusing an instruction based on the defendant's right to use reasonable force to repel excessive force by a federal law enforcement officer.[3] The Spans offered no such instruction, however, and did not object to the district court's decision to give Ninth Circuit Model Instruction 8.02B in place of the Span's general self-defense instruction. Accordingly, we review the district court's decision to give the model instruction for plain error. *See* Fed.R.Crim.P. 30 ("No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection."); Fed. R.Crim.P. 52(b) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.").

■ Plain error arises only in exceptional circumstances where we find that the trial court's decision affected substantive rights and where it is "highly probable that the error materially affected the verdict." *United States v. Armstrong*, 909 F.2d 1238, 1244 (9th Cir.) (quoting *United States v. Kessi*, 868 F.2d 1097, 1102–03 (9th Cir. 1989)), *cert. denied*, —— U.S. ——, 111 S.Ct. 191, 112 L.Ed.2d 153 (1990).

---

**3.** Under the Fourth Amendment, an individual has the right to be free from the use of excessive force by a law enforcement officer even when that officer is making a lawful arrest. *Graham v. Conner*, 490 U.S. 386, 394–96, 109 S.Ct. 1865, 1871–72, 104 L.Ed.2d 443 (1989) ("[A]ll claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach.") (original emphasis omitted); *Tennessee v. Garner*, 471 U.S. 1, 7, 105 S.Ct. 1694, 1699, 85 L.Ed.2d 1 (1985) ("[A]pprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the Fourth Amendment"); *Curnow v. Ridgecrest Police*, 952 F.2d 321 (9th Cir.1991); *Reed v. Hoy*,

909 F.2d 324, 329 (9th Cir.1989) (applying *Graham*), *cert. denied*, —— U.S. ——, 111 S.Ct. 2887, 115 L.Ed.2d 1053 (1991). Other circuits and numerous states acknowledge this right of self-defense. *See, e.g., United States v. Frizzi*, 491 F.2d 1231, 1232 n. 2 (1st Cir.1974) ("We of course do not suggest that self defense against unreasonable 'standing up' for [the officer's own] authority ... would subject the resister to liability under 18 U.S.C. § 111."); *United States v. Wallace*, 368 F.2d 537, 538 (4th Cir.1966) (section 111 "does not proscribe reasonable force employed in a justifiable belief that it is exerted in self-defense"), *cert. denied*, 386 U.S. 976, 87 S.Ct. 1169, 18 L.Ed.2d 136 (1967); Dag E. Ytreberg, *Right to Resist Excessive Force Used in Accomplishing Lawful Arrest*, 77 A.L.R.3d 281 (1990) (citing cases).

■ We do not find plain error in the district court's failure to instruct the jury on an excessive force theory of defense. The Spans offered no such instruction, and they did not rely on this theory of defense at trial.

In presenting their case to the jury, the Spans characterized their actions as those of private citizens defending themselves from attack by others they thought to be private citizens. In this respect, the Spans emphasized two facts in their defense. First, the Spans asserted that they were victims of an unprovoked attack initiated by Grotewold and Dains. Second, the Spans emphasized that they did not know that Grotewold and Dains were federal marshals. The general self-defense instruction offered by the Spans reflects the type of case presented to the jury by defense counsel.[4]

Although the facts of this case could have been presented to correspond with an excessive force theory of defense, the Spans did not present such a case at trial. We conclude that the district court did not commit plain error by failing to offer *sua sponte* an instruction on an excessive force theory of defense not raised during trial.

The Spans assert that they did propose an instruction on excessive force because the general self-defense instruction that they offered was broad enough to encompass an excessive force theory of defense. During the district court's conference with counsel on jury instructions, defense counsel asserted that one of its theories of defense was that the Spans defended themselves reasonably from excessive force used by the marshals.

■ An assertion made by defense counsel in chambers about their theory of defense is not the same as presenting a case to the jury based on that theory. The district court must still decide whether the case presented at trial supports giving an instruction based on a particular theory of defense. *See Kessi,* 868 F.2d at 1103 (a defendant is entitled to any theory of defense instruction that is supported by law and by the evidence presented at trial) (citing *United States v. Sommerstedt,* 752 F.2d 1494, 1496 (9th Cir.), *cert. denied,* 474 U.S. 851, 106 S.Ct. 149, 88 L.Ed.2d 123 (1985)).[5]

The Spans' assertion of self-defense at trial did not establish sufficient foundation for an instruction on an excessive force theory of defense. Similarly, the general self-defense instruction offered by the Spans does not amount to a proposed instruction on the right to offer reasonable resistance to repel any excessive force used by federal law enforcement officers.

2.

■ The Spans also argue that giving Model Instruction 8.02B is error because it does not tell the jury to acquit if it finds that the government has not met its burden of proof. On appeal, we review jury instructions "to determine whether, taken as a whole, they mislead the jury or state the law incorrectly to the prejudice of the objecting party." *Reed v. Hoy,* 909 F.2d 324, 326 (9th Cir.1989) (citation omitted). In this case, however, we review the Spans' claim for plain error because the Spans' counsel failed to object to the instruction on these grounds. *See* Fed.R.Crim.P. 52(a) ("Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."); Fed.R.Crim.P. 30 ("No party may assign as error any portion of the charge or omission therefrom unless that party objects thereto before the jury retires to consider its verdict. . . .").

We do not find plain error in the district court's instructions on the grounds asserted here. The model instruction clearly im-

---

**4.** For the text of this instruction, see note 2, *supra.*

**5.** The elements of a general right of self-defense do overlap with those of a more narrowly-defined right of self-defense against excessive force, but they also differ in important ways. For example, the type of self-defense asserted against the use of excessive force typically involves an arrest. The arrestee who later asserts that she did not violate section 111, but rather defended herself from the use of excessive force in all likelihood knew that her alleged assailant was a federal law officer.

poses the burden of disproving self-defense on the government. The implication is fairly obvious that the jury must acquit if the government fails to meet that burden.

Furthermore, the district court gave a general instruction on the presumption of innocence wherein the jury was told specifically that: "The government has the burden of proving every element of the charge beyond a reasonable doubt. If it fails to do so, you must return a not guilty verdict." After defining reasonable doubt, the district court again instructed the jury that: "If after a careful and impartial consideration with your fellow jurors of all the evidence, you are not convinced beyond a reasonable doubt that a defendant is guilty, it is your duty to find that defendant not guilty."

We do not see how, in the circumstances of this case, plain error could be found in the absence of a third reminder to the jury of its duty to acquit if the government fails to meet its burden of proof. Where, for example, the Tenth Circuit reversed a conviction under section 111 based on such an error, it found the text of the instruction "so ambiguous that it could permit the jury to infer that the burden is on the defendant [to prove self-defense]." *United States v. Corrigan,* 548 F.2d 879, 883 (10th Cir. 1977). By contrast, the revised model instruction given by the district court in the Spans' case is in no way ambiguous about the government's burden of proof. The Spans' argument on this issue is wholly unpersuasive.

**B.**

The Spans next argue that the district court erred by refusing to give jury instructions offered by the Spans on the right of a defendant to resist an arrest that is unlawful because it is not supported by probable cause. The district court rejected the instructions offered by defense counsel on the ground that such a right is no longer Ninth Circuit law following the Supreme Court's decision in *United States v. Feola,* 420 U.S. 671, 684, 95 S.Ct. 1255, 1263–64, 43 L.Ed.2d 541 (1975). According to the district court, *Feola* overruled our decision in *United States v. Moore,* 483 F.2d 1361 (9th Cir.1973).

In *Moore,* we recognized that the right to resist an arrest not based on probable cause had come under criticism. We merely assumed that such a right still existed and that it constituted a defense to the charge of violating section 111. *Moore,* 483 F.2d at 1364. Nonetheless, we held that any such right did not apply in Moore's case because the federal officers had probable cause to arrest him. *Moore,* 483 F.2d at 1364. Moore's arrest was unlawful because it resulted from an unlawful search and not because federal officers did not have probable cause. *Moore,* 483 F.2d at 1364–65. To the extent that any right of resisting an arrest not supported by probable cause still existed, we declined to extend that right to an arrest that was unlawful only in a derivative sense. *Moore,* 483 F.2d at 1365. We noted, however, that we might take a different view in cases of "bad faith, unreasonable force, or provocative conduct by the arresting officer." *Moore,* 483 F.2d at 1365.

We asked the parties to provide supplemental briefing on the question whether *Feola* overruled *Moore.* The Spans argue that *Feola* could not overrule *Moore* because *Feola* did not address a situation involving resistance to an arrest not supported by probable cause. In their supplemental brief, the government argued for a much broader reading of *Feola.*

We agree with the Spans that *Feola* did not overrule *Moore* and did not consider the issue whether a person has a right to resist an arrest that is not based on probable cause. *Moore,* however, does not support a conclusion that the district court erred by refusing to give the instruction that the Spans requested.

Our holding in *Moore* did not depend on the notion that a person has a right to resist an arrest not supported by probable cause. The discussion on that issue was dictum. In addition, the language itself refers to the dearth of contemporary authority that supports the existence of such a right. *Moore,* 483 F.2d at 1364 n. 1, 1365. Even the dictum in *Moore* indicates that

the right to resist an arrest that was not supported by probable cause is of doubtful validity today absent "bad faith, unreasonable force, or provocative conduct by the arresting officer." *Moore,* 483 F.2d at 1365.

This more limited right of self-defense discussed in *Moore* is synonymous with the statutory requirement that a federal officer acting outside the scope of official duty is not entitled to the protections of section 111. *See United States v. Danehy,* 680 F.2d 1311, 1316 (11th Cir.1982) (per curiam) ("[T]here may be some residual role for the common law right [of resisting an unlawful arrest] where it appears that the arresting officer is engaged in a 'frolic of his own.' "); *United States v. Martinez,* 465 F.2d 79, 82 (2d Cir.1972) (some role for the right of resisting an unlawful arrest where the officer is on a personal frolic).[6] The instruction requested by the Spans did not rely on *Moore* for this more limited proposition. Rather, the Spans requested an instruction taken directly from the dictum in *Moore.*[7] On its face, *Moore* is weak authority indeed for an obviously controversial proposition.

At most, *Moore* stands for the rule that an individual has a limited right to offer reasonable resistance to an arrest that is the product of an officer's personal frolic. *Moore,* 483 F.2d at 1364–65. That right is not triggered by the absence of probable cause, but rather by the officer's bad faith or provocative conduct. *Moore,* 483 F.2d at 1385. The instruction requested by the Spans did not state the law of our circuit,

and was properly refused. *See Kessi,* 868 F.2d at 1103 (a defendant is entitled to an instruction on any theory of defense that is supported by law and by the evidence presented at trial) (citing *Sommerstedt,* 752 F.2d at 1496).

### C.

■ The Spans next contend that the district court erred when it instructed the jury on the statutory requirement that a federal officer must be engaged in official duties to receive the protection of section 111. According to this argument, the court's instructions improperly directed the jury to find that the marshals were in performance of their official duties as the statute requires. The Spans argue that the instructions foreclosed any possibility that the jury might find that Dains and Grotewold were on a personal frolic and that the Spans were therefore entitled to resist arrest in self-defense.

The district court instructed the jury that "[f]ederal officers engaged in good faith and colorable performance of their duties may not be forcibly resisted, even if the resistor turns out to be correct, that the resisted actions should not, in fact, have been taken. The statute requires him to submit peaceably and seek legal redress thereafter." Just before giving this instruction, the district court had also instructed the jury that "[a] deputy United States Marshal who is investigating leads in connection with a fugitive or trying to

---

6. For cases interpreting this statutory requirement, see *United States v. Hohman,* 825 F.2d 1363 (9th Cir.1987); *United States v. Spears,* 631 F.2d 114 (9th Cir.1980); *United States v. Parker,* 604 F.2d 1327, 1329–30 (10th Cir.1979) (citing cases); *United States v. Reid,* 517 F.2d 953, 960 (2d Cir.1975); *Frizzi,* 491 F.2d at 1232.

7. The Spans requested the following instructions asserting a broad right to resist any arrest not supported by probable cause:

   If the United States Marshals had no right to arrest, JERRY SPAN and/or DARLENE SPAN might resist the illegal attempt to arrest them, using no more force than was absolutely necessary to repel the assault constituting the attempt to arrest. One has an undoubted right to resist an unlawful arrest.

   The privilege to resist an unlawful arrest is available only if the arrest was "unlawful."

   In order for an arrest to be lawful it must be based upon probable cause.

   Probable cause at the time of arrest is determined by examining whether at the moment the facts and circumstances within the Marshals' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the defendant had committed or was committing an offense. Suspicious conduct is not enough. Probable cause is lacking if the circumstances relied on are susceptible to a variety of credible interpretations not necessarily compatible with nefarious activities.

arrest a person is engaged in his official duties."

Defense counsel for the Spans objected to this instruction at the time it was given, and thereby preserved the record for appeal on this issue. We review the district court's instructions de novo because this issue presents the question whether the elements of a statutory offense were accurately presented to the jury. *Armstrong,* 909 F.2d at 1243 (quoting *United States v. Spillone,* 879 F.2d 514, 525 (9th Cir.1989), *cert. denied,* —— U.S. ——, 111 S.Ct. 210, 112 L.Ed.2d 170 (1990)).

We agree with the Spans that the preferred course would have been to submit to the jury the question whether Marshals Dains and Grotewold were engaged in official duties. *Cf. Frizzi,* 491 F.2d at 1232. In this case, however, we find that the district court's instructions were not reversible error.[8]

The instruction given was not a directed verdict on the question whether the marshals acted in good faith. The instruction states only that the activity of looking for a suspect is official conduct. We find no error in the district court's instruction characterizing this aspect of the marshals' conduct as official duty. There was no factual dispute that the marshals were looking for a suspect when they approached the Spans, and the district court's characterization of that conduct as official duty is uncontroverted.

The crux of the Spans' critique of the district court's instruction turns on their argument that they defended themselves from the use of excessive force by Dains and Grotewold. According to this argument, the district court's instruction was error because it may have prevented the jury from acquitting the Spans even if it

found that the Spans reasonably resisted excessive force by the marshals.

We do not find that the district court's instruction on this issue was error. As noted above, the instruction was not a directed verdict on the issue of good faith, and did not preclude acquittal based on an excessive force theory of defense. The district court's instruction stated that officers engaged in good faith performance of their duties may not be forcibly resisted. An officer who uses excessive force is not acting in good faith. Contrary to the Spans' argument, the instruction does not require an arrestee to submit passively to an unprovoked beating.

On its own terms, the instruction does not foreclose acquittal based on an excessive force theory of defense. Even if it did, however, we would not find reversible error here because the Spans did not present this theory of their case at trial. The Spans have essentially asked us to find error in an instruction that they say precludes a theory of defense on which they did not rely at trial and for which they offered no instruction themselves. This we cannot do.

## II. Destruction of Evidence

The Spans argue that the district court clearly erred by concluding that the marshals did not intentionally destroy evidence, and that the indictment against the Spans should have been dismissed as a result. Specifically, the Spans contend that the district court applied the wrong standard for evaluating evidence that Marshal Dains destroyed a film canister belonging to Jerry Span's brother Peter.[9] We review the district court's findings on this issue for clear error. *United States v. Weinstein,* 834 F.2d 1454, 1463 (9th Cir.1987).

---

8. The record contains some confusion about whether the district court informed counsel in advance that it intended to give the disputed instruction. This is not grounds for reversal here because the instruction given was not reversible error, particularly in light of defense counsel's own failure to propose an instruction stating that officers engaged in a personal frolic are not entitled to the protection of section 111.

9. We need not reach the issue whether the Spans suffered any prejudice as a consequence of the government's alleged destruction of evidence because the district court did not find that allegation credible.

582

The Spans assert that at the time of their arrest, Marshal Dains grabbed a film canister from a witness and crushed it with the heel of his boot. The district court heard testimony from two defense witnesses and examined a photograph of the film canister allegedly destroyed.

The Spans focus their argument on an isolated portion of the trial transcript where the district court reviewed a photo of the film canister and stated that it could not tell "to a certainty" that it had been crushed in the manner asserted by the Spans. The remainder of the transcript indicates that the district court heard and considered all of the evidence presented before reaching a conclusion that the story lacked credibility.

We are not persuaded that the district court applied the wrong standard of proof or made factual findings that were clearly erroneous. The district court made a credibility determination that triers of fact are well-positioned to make. *See United States v. Vasquez*, 858 F.2d 1387, 1391 (9th Cir.1988) (credibility determinations should be made by the trier of fact and reviewed for clear error), *cert. denied*, 488 U.S. 1034, 109 S.Ct. 847, 102 L.Ed.2d 978 (1989), *and cert. denied*, 489 U.S. 1029, 109 S.Ct. 1161, 103 L.Ed.2d 220 (1989). The district court's decision denying the Spans' motion to dismiss the indictment was not clearly erroneous.

III. The Jencks Act and *Brady* rule

■ Finally, the Spans argue that the government violated the requirements of the Jencks Act, 18 U.S.C. § 3500,[10] and of the rule in *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), when it failed to turn over to defense counsel grand jury testimony by FBI Agent

Petrie until after Petrie had been cross-examined. Defense counsel had requested all Jencks Act and *Brady* material before trial.

Petrie was the last government witness to testify. According to the Spans, the agent's grand jury testimony was crucial to impeaching the testimony of Marshals Dains and Grotewold. Apparently, Agent Petrie's grand jury testimony revealed some inconsistency in the trial testimony of Marshal Grotewold.

■ We will not reverse a conviction for Jencks Act error where the error is more likely than not harmless. *United States v. Wallace*, 848 F.2d 1464, 1471 (9th Cir.1988).[11] In this case, compliance with the Jencks Act would have required the government to turn over to defense counsel Petrie's grand jury testimony before Petrie was cross-examined. The government failed to do this until after Petrie completed all of his trial testimony. Counsel for the Spans also failed to bring to the court's attention the government's obligation to do so until after Petrie had been cross-examined. When counsel for the Spans did alert the court to the government's noncompliance with the Jencks Act, the district court ordered the government to turn over the material to defense counsel. The government complied with this order. In addition, the district court gave defense counsel the opportunity to recall Petrie for further cross-examination.[12] This minimized any prejudice from the government's initial failure to produce Petrie's grand jury testimony.

■ Similarly, we do not find reversible error based on the rule of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Under *Brady*, "suppression by

---

**10.** Section 3500(b) provides that "[a]fter a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement ... which relates to the subject matter as to which the witness has testified."

**11.** A more stringent standard of harmlessness may apply in those situations where "denial of production of a Jencks Act type of statement

might be a denial of a Sixth Amendment right. Where ... the appellant's conviction rests heavily on the credibility of a single accomplice, ... the unproduced Jencks Material may well implicate confrontation clause or compulsory process issues." *Wallace*, 848 F.2d at 1471 (internal citation omitted).

**12.** Counsel for the Spans elected not to recall the agent for additional cross-examination.

the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87, 83 S.Ct. at 1196–97.

Our decision in *United States v. Gordon*, 844 F.2d 1397 (9th Cir.1988), is dispositive of the Spans' argument that a *Brady* violation by the government requires reversal of the convictions. In *Gordon*, we held that failure to disclose allegedly material evidence may not be prejudicial so long as it occurs "at a time when disclosure would be of value to the accused." *Gordon*, 844 F.2d at 1403 (internal quotation omitted).

Here, the district court's rulings ensured that the requirements of *Gordon* were met. Moreover, any prejudice caused by delayed disclosure was mitigated by the district court's decision to allow the Spans to recall Petrie to the stand if they chose to do so.

## CONCLUSION

The district court's instructions to the jury were not reversible error in light of the case presented by the Spans at trial. Furthermore, the district court did not err in denying the Spans' motion to dismiss the indictment based on the government's alleged bad faith destruction of evidence. Finally, the Spans' contentions of Jencks Act and *Brady* rule violations do not merit reversal of the Spans' convictions.

The convictions of Jerry Span and Darlene Span are AFFIRMED.