UNITED STATES of America, Plaintiff–Appellee,

v.

Gregory Alan MORTON, Defendant–Appellant.

No. 92–50653.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 11, 1993.

Decided July 20, 1993.

Mary E. Maguire, Federal Defenders of San Diego, Inc., San Diego, CA, for defendant-appellant.

Steve Miller, Asst. U.S. Atty., San Diego, CA, for plaintiff-appellee.

Before: BROWNING, BRIGHT,* and TANG, Circuit Judges.

TANG, Circuit Judge:

Gregory Alan Morton appeals his jury conviction for assaulting a federal officer in violation of 18 U.S.C. § 111. He presents several issues; we need consider only one. We reverse and remand for a new trial because the district court erred in refusing to instruct the jury on self-defense.

## I.

On an April morning in 1992, the U.S. Marshal and San Diego Police raided Morton's apartment looking for another man with whom Morton had been confused. Attracted by the noise, Morton observed the raid from a neighbor's house. He then left the house, climbed a fence, and proceeded into an alley.

Two hours later, Morton was walking about two blocks from his apartment when an unmarked car pulled up near him, prompting Morton to run. Deputy Marshal William Sorukas got out of the car and chased Morton, yelling "police" and "stop." Sorukas testified that he was in plain clothes and that he was not wearing a badge on his shirt. There is evidence from a San Diego police officer that the area was crime-ridden.

Sorukas caught Morton once, but Morton got away. When Sorukas again caught Morton, the two struggled as Sorukas tried to handcuff him. During the struggle James Bingham, a city worker, happened by. He asked what was going on and Sorukas responded that he was a cop attempting to arrest a fugitive. Bingham was skeptical:

Q. Okay. You said when you first came around the corner you observed these two men?

A. Uh-huh—yes, I did.

Q. And you thought they were construction workers?

A. Yes, because they—the—he had his shirt off and he had Levis on—they just looked like two average John Does, you know, fighting. Like I said, the crane was there; so, it made it look like it was a construction site, and they might have been two construction workers; so, that was the first thing that I pictured in my mind was two construction workers, maybe they was beefing it out about something.

Q. Okay, and when Deputy Sorukas yelled out, "I'm a cop, help", did you, in fact, think he was a police officer?

A. Not particularly—no, my—my first guess was, when he said he was a cop, I more or less said to myself, you know, either one of you guys could be a cop, I don't know.

Q. But it wasn't clear to you he was law enforcement?

A. No, no, it wasn't.

Q. And you didn't think he was law enforcement?

A. Not at that particular time because they were plain clothes, he looked like just an average John Doe on the street.

Q. Okay, and I think you said that at some point you noticed a badge?

A. Yes.

---

* Honorable Myron H. Bright, Senior Circuit Judge for the Eighth Circuit, sitting by designation.

Q. Where was that badge?

A. The badge, I believe, was on his belt buckle on the side of him.

. . . .

Q. It wasn't in clear view?

A. No.

Q. And it wasn't readily apparent to you that he, in fact, was a law enforcement officer; was it?

A. No, it wasn't.

When Bingham noticed Sorukas's badge, however, he assisted the deputy marshal in handcuffing Morton.

Once Morton was subdued, San Diego police officer Greg Knight responded to the scene after receiving report of a fight:

Q. And when you got to the scene, things had already ended, right?

A. That's correct.

Q. And—so, you didn't see anyone wrestling or on the ground or any kind of a fight?

A. No, I didn't.

Q. Okay, and you observed two individuals?

A. Two individuals were pointed out to me by citizens.

(Pause.)

Q. Okay. As the individuals who had been involved in the fight?

A. That's what I assumed, yes.

Q. Okay, and those individuals—can you tell us how they were dressed?

A. To the best of my recollection, they were both dressed in civilian clothing.

Q. Okay, and, so, there was nothing on those individuals that indicated that they were a law enforcement officer [sic]; was there?

A. Not immediately, no.

Q. Okay, and it was only after you got to the scene and you spoke with an individual that you realized that the U.S. Marshals were involved; isn't that right?

A. Yes. One of the individuals, when I questioned what they were up to, displayed a badge on his belt.

Q. Okay, but up until that point you had no indication or no idea he was a law enforcement officer; isn't that right?

A. That's correct.

At the conclusion of the case, the district court refused to give Morton's requested jury instructions on self-defense. The jury convicted Morton, and he was sentenced to two years incarceration followed by two years of supervised release. Morton timely appeals his conviction.

## II.

We review de novo a district court's refusal to instruct the jury on self-defense. *United States v. Wagner*, 834 F.2d 1474, 1486 (9th Cir.1987). A defendant is entitled to an instruction on his theory of the case if the theory is legally cognizable and there is evidence upon which the jury could rationally find for the defendant. *E.g.*, *Mathews v. United States*, 485 U.S. 58, 63, 108 S.Ct. 883, 886–87, 99 L.Ed.2d 54 (1988); *United States v. Escobar de Bright*, 742 F.2d 1196, 1198, 1201 (9th Cir.1984). A "mere scintilla" of evidence supporting the defendant's theory, however, is not sufficient to warrant a defense instruction. *United States v. Jackson*, 726 F.2d 1466, 1468 (9th Cir.1984). Yet when there is sufficient evidence, "[t]he right to have the jury instructed as to the defendant's theory of the case is one of those rights 'so basic to a fair trial' that failure to instruct ... can never be considered harmless error." *Escobar de Bright*, 742 F.2d at 1201; *accord United States v. Zuniga*, 989 F.2d 1109, 1111 (9th Cir.1993).

We have recognized a defense to assaulting a federal agent based on the defendant's honest mistake of fact or lack of knowledge that the victim was a law enforcement officer. *United States v. Span*, 970 F.2d 573, 576–77 (9th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1283, 122 L.Ed.2d 676 (1993); *Jackson*, 726 F.2d at 1468.[1] The defense consists of (1) a mistake

---

1. The element of mistake or lack of knowledge is not concerned with whether the defendant recognized the alleged victim as a federal agent but with whether the defendant recognized that the agent was authorized to act in the manner which allegedly provoked the purported self-defense.

or lack of knowledge as to authority, (2) a reasonable belief that force was necessary to defend against an immediate use of unlawful force, and (3) the use of no more force than appeared reasonably necessary. *Span,* 970 F.2d at 576.[2] If there is sufficient evidence to warrant an instruction on this defense, the court must also instruct the jury that the government, in addition to proving the elements of the offense, must negate beyond a reasonable doubt at least one element of the defense in order to obtain a conviction. *Id.*

Morton requested a jury instruction on this form of self-defense. There is no question concerning the sufficiency of evidence on the latter two elements. That is, assuming Morton could believe that he was being attacked by an unauthorized stranger (i.e., assuming the first element of the defense), the evidence otherwise was such that a jury could have viewed Morton's efforts to escape as reasonable, thereby warranting the self-defense instruction. *Cf. United States v. Plummer,* 789 F.2d 435, 438 (6th Cir.1986) (upholding refusal to instruct on self-defense where, "at the time Plummer is alleged to have assaulted Givens, there was no evidence of a trespass or other threat to justify Plummer's actions if Givens had been a private citizen").

■ The issue, then, is whether there was sufficient evidence that Morton honestly mistook Sorukas for an unauthorized assailant or otherwise did not know Sorukas was authorized to arrest Morton. The district court concluded that such evidence was lacking:

> [A]s I view the evidence, [Morton] left this [house], went over a fence, and to put it in a—was on the lam, so to speak. He didn't want any part of these officers. He knew the officers were after him.

See United States v. Young, 464 F.2d 160, 163 (5th Cir.1972) (referring to defendant's "ignorance of the victim's official privilege to interfere with the defendant's person or freedom of movement").

2. A second, related defense exists if the agent intended to use excessive force, regardless of the defendant's knowledge of the federal agent's identity. *See Span,* 970 F.2d at 577; *see also United States v. Middleton,* 690 F.2d 820, 826 (11th Cir.1982) (upholding refusal to instruct

The testimony is from Sorukas that he hollered, "Stop, police—stop, police", two or three times, and the Defendant didn't stop. Now, that's the testimony; that's not contradicted in any way, and that's why I'm not going to give the instruction.

There is no indication that he acted in self-defense, or no indication that he didn't know these were police officers, and the case you've just cited [*United States v. Danehy,* 680 F.2d 1311 (11th Cir.1982) ], that—apparently, the Defendant testified and said he thought they were intruders or pirates.

. . . .

If an officer announces himself, the people are supposed to—to at least stop and talk with him.

Elsewhere, the district court stated: "[Morton] was instructed to stop, [Sorukas] was an officer, and [Morton] kept running. A normal, reasonable person would stop...."

In essence, the district court ruled that uncontroverted evidence that the federal agent orally identified himself precludes the possibility that the defendant still might reasonably doubt the agent's authority. Consequently, the court rejected Morton's argument that the testimony of Bingham and Knight raised a sufficient doubt regarding Morton's knowledge of Sorukas's authority.

Where a federal agent has failed to identify herself prior to the assault, and her identity or authority was not otherwise apparent, a self-defense instruction will most likely be necessary. *See United States v. Goldson,* 954 F.2d 51, 53–56 (2d Cir.1992); *United States v. Perkins,* 488 F.2d 652, 653–55 (1st Cir.1973), *cert. denied,* 417 U.S. 913, 94 S.Ct. 2612, 41 L.Ed.2d 217 (1974). Similarly, an instruction will be necessary where the defendant takes the stand and contradicts

jury on self-defense where defendant who testified that he was aware that he was being detained by law enforcement officers "never testified to having been struck, kicked or assaulted" such that "any force used by the apprehending officers ... could [not] have given rise to a reasonable apprehension that such force was unlawful"), *cert. denied,* 460 U.S. 1051, 103 S.Ct. 1497, 75 L.Ed.2d 929 (1983). This form of self-defense is not at issue here.

claims that officers identified themselves. *See Span,* 970 F.2d at 575–76; *United States v. Danehy,* 680 F.2d 1311, 1315 (11th Cir. 1982); *United States v. Young,* 464 F.2d 160, 163–64 (5th Cir.1972). These cases offer little insight, however, on the question whether a self-defense instruction is needed when agents undoubtedly announced their identities but the defendant nevertheless allegedly doubted their authority.

The only case we have found touching on this point is *United States v. Corrigan,* 548 F.2d 879 (10th Cir.1977). In *Corrigan,* three Internal Revenue Service special agents approached the defendant to arrest him. *Id.* at 880. Corrigan knew one of the officers, Agent Vickers. *Id.* In fact, Corrigan had previously examined Vickers's credentials, including a pocket commission and a badge. *Id.* As Vickers was arresting Corrigan, the two other agents grabbed Corrigan from behind without identifying themselves. *Id.* In response, Corrigan struggled and assaulted Agent Vickers and a fellow agent with liquid red pepper. *Id.* at 881.

Corrigan testified that he was acting in defense of himself, his sister (whom he thought was nearby), and Agent Vickers. The trial court instructed the jury on self-defense, but the Tenth Circuit concluded that the instruction did not adequately describe the burdens of proof and therefore reversed. 548 F.2d at 881–84. In doing so, the appellate court indicated that the evidence warranted a self-defense instruction. *See id.* at 883.

Corrigan's defense to assaulting the agent who grabbed him is unremarkable because he was unaware of this agent's presence or identity. Instead, *Corrigan* is significant because the defendant was entitled to a self-defense instruction regarding the assault on Vickers *even though the agent was known to the defendant.* Although Corrigan claimed that the assault on Vickers was a mistake, Corrigan also testified that he was unaware Vickers was still with the IRS and had authority to make arrests. 548 F.2d at 881. The decision thus dispels the district court's ruling here that undisputed claims of identification preclude self-defense.

In light of *Corrigan,* we find the evidence here sufficient to warrant a self-defense instruction. There was enough evidence from which the jury could have inferred that Morton mistook Sorukas to be an unauthorized assailant. Specifically, Bingham testified that he was skeptical about Sorukas's claim of authority. The city worker's doubts were not answered until he saw Sorukas's obscured badge. The testimony of Officer Knight, as well as Sorukas's description of his own appearance, add to the inference that one look at Sorukas would not resolve reasonable doubts.

There is also evidence that these events took place in a backdrop of relative danger such that a claim of authority might be questioned. Officer Knight testified that he was not surprised to be called to a morning fight, and that he received "a lot of calls in that entire area down there." In response to defense counsel's question whether "there is a fair amount of crime in that neighborhood," Knight answered, "[a]bsolutely." Under the circumstances, Morton arguably need not have looked at his nondescript pursuer more than once before he could claim self-defense in seeking to escape.

Rather than leaving this question to the jury, however, the district court held not only that the defendant must take a second look, but that he cannot avoid the pursuing officer when there is no dispute that the officer orally identified himself. According to the court, the option of self-defense evaporates once the federal agent announces his identity, even if that identity is otherwise concealed. Again, we disagree. If reason remains to question the officer's authority despite his oral identification, then a self-defense instruction is appropriate. This is true even if evidence of the defendant's doubt is weak, inconsistent, or of questionable credibility—so long as it is more than a scintilla. *See United States v. Streit,* 962 F.2d 894, 898 (9th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 431, 121 L.Ed.2d 352 (1992).

Of course, Morton saw the raid on his apartment, and fled shortly thereafter, indicating knowledge that authorities were pursuing him. Later, he also ran from Sorukas even before the marshal got out of his car. This evidence leaves only a little room for Morton to argue that he believed that Soru-

kas was an unauthorized assailant. But the evidence supporting self-defense amounted to more than a scintilla, and the question of self-defense should have been given to the jury.[3]

### III.

Because Morton presented sufficient evidence to raise a question regarding his perception of Sorukas, Morton was entitled to a self-defense instruction. Accordingly, we reverse his conviction and remand for a new trial. *See Zuniga*, 989 F.2d at 1111 ("failure to instruct the jury on the defendant's theory of the case, where there is evidence to support such instruction, is reversible per se").[4]

**REVERSED** and **REMANDED.**

---

3. Our decisions in *Streit* and *Jackson* do not require a different result. Neither case involved a defendant who could doubt the authority of arresting officers notwithstanding their oral identifications. On the issue of refused self-defense instructions, the sole question in those cases was whether there was sufficient evidence either that the police did not orally identify themselves or that the defendant did not hear the oral identifications. *See Jackson*, 726 F.2d at 1468; *Streit*, 962 F.2d at 898. The fact that Morton, like the defendants in *Jackson* and *Streit*, did not testify at trial is irrelevant in assessing whether there is sufficient evidence to require a self-defense instruction.

4. There is no question, in any event, that Morton suffered prejudice as a result of the district court's error. Although his counsel was permit-

ted to argue to the jury that, "[w]hat Mr. Morton did here was what any reasonable person would do," the jury was instructed that, in order to convict, it need find only that Morton acted intentionally. Morton's argument therefore fell on deaf ears because he did not dispute that his acts were intentional. Furthermore, under the self-defense instruction which Morton requested and which we approved in *Span*, 970 F.2d at 576, the government must negate beyond a reasonable doubt one of the three elements of self-defense. Because the district court erroneously denied Morton this instruction, the government was wrongfully relieved of its burden to disprove one of the self-defense elements.